James P. DORAN and Eileen T. Doran, Plaintiffs-Appellees,

v.

Mary Lou COMPTON, Executrix of the Estate of Margaret Watkins, Deceased, and Texas Scottish Rite Hospital for Crippled Children, Defendants-Appellants,

Dallas Society for Crippled Children, Defendant-Appellee.

No. 80–1146.

United States Court of Appeals, Fifth Circuit. Unit A

May 20, 1981. Rehearing Denied June 18, 1981.

---

Redacted page content — fully obscured.

Royal H. Brin, Jr., Kevin H. Good, J. Carlisle DeHay, Jr., Dallas, Tex., for defendants-appellants.

Craig P. Campbell, Seattle, Wash., Webber W. Beall, Jr., Mark E. Smith, Dallas, Tex., for plaintiffs-appellees.

Before AINSWORTH and SAM D. JOHNSON, Circuit Judges, and HUNTER,* District Judge.

SAM D. JOHNSON, Circuit Judge:

This interlocutory appeal raises questions of the applicability and validity of former Tex.Ins.Code Ann. art. 5.82, § 4 (effective June 3, 1975 and originally scheduled to expire December 31, 1977), a two-year statute of limitations for certain medical malpractice claims, with respect to a cause of action that accrued prior to the effective date of the statute. We hold that the statute does not retroactively apply to causes of action that accrued prior to the enactment of the statute and that were not then time-barred. Consequently, the district court's denial of defendants' motion for summary judgment with respect to Jeffrey Doran's claims is affirmed.

The alleged medical malpractice in this case involves the diagnosis and treatment of Jeffrey Doran. Jeffrey was born January 11, 1960, and was a normal, active child physically and mentally from birth to age six. At that time his parents, James P. and Eileen T. Doran, noticed that he could not fully manipulate his right arm and that he had assumed an unusual gait when walking. On January 17, 1969, the Dorans took Jeffrey to Dr. Margaret Watkins for examination and treatment. Dr. Watkins, a physician and surgeon specializing in the field of orthopedic surgery, was associated with defendant Dallas Society for Crippled Children.[1] Jeffrey was admitted to Dallas Soci-

* District Judge of the Western District of Louisiana, sitting by designation.

1. Dallas Society is a treatment and rehabilitation center for children age 16 or under. Dr. Watkins was a volunteer Medical Director of the Cerebral Palsy Treatment Center of Dallas Society and was associated with Dallas Society from 1947 until her death on November 15, 1975. As a Medical Director, she (1) conducted a medical clinic; (2) recommended and approved evaluations, treatment, and therapy administered to patients by the treatment center staff; (3) invited members of the medical profession to serve on the volunteer medical staff; and (4) sought participation and consultation of

ety for evaluation under Dr. Watkins' supervision. Over the course of the next several months, Jeffrey was examined by Dr. Watkins and by numerous other medical personnel employed by Dallas Society. He was seen at Dallas Society on January 20, 27, February 5, and 6, 1969. Jeffrey's condition was diagnosed as right spastic hemiplegia, which is associated with cerebral palsy, and a program of physiotherapy and occupational therapy with periodic re-evaluations was prescribed. Jeffrey's ability to utilize his right arm and right leg, however, progressively deteriorated. Jeffrey's last contact with Dr. Watkins and Dallas Society was in June 1969.

In June 1970, the Dorans took Jeffrey to defendant Texas Scottish Rite Hospital for Crippled Children.[2] He was again diagnosed as having cerebral palsy with right spastic hemiplegia. Two surgical procedures—an Achilles tendon lengthening procedure on June 5, 1970 and an operation for multiple tendon releases on May 24, 1971—were performed at Scottish Rite. Following both operations, programs of physical therapy with periodic re-evaluations were prescribed. Jeffrey was last treated at Scottish Rite in May 1973.[3] Jeffrey continued to lose the use of his right side and eventually began to suffer from more general paralysis with attendant muscle wasting and atrophy.

Later in 1973, Jeffrey's ailment was finally properly diagnosed by Dr. Carl Pevoto as resulting from a tumor of the spinal cord. In July 1973, a laminectomy performed on Jeffrey by Dr. Morris Sanders resulted in the partial removal of an oligondendroglioma-astrocytoma tumor. Following that operation Jeffrey experienced some improvement, but thereafter his condition regressed. Despite extensive radiation therapy designed to destroy the surgically inaccessible remnants of the tumor, Jeffrey's condition has not improved, and he is presently a functional quadriplegic.

Plaintiffs James and Eileen Doran instituted this suit on August 26, 1977, alleging malpractice by misdiagnosis of the condition of their son Jeffrey. Their suit asserted individual claims and claims on behalf of their son for the injury and damage sustained by their son and themselves as a result of the defendants' negligence. Defendants are Ms. Compton (executrix of the Estate of Dr. Watkins), Scottish Rite, and Dallas Society. In February 1979, Compton and Scottish Rite filed a joint motion for summary judgment, contending that the cause of action was barred by Tex.Ins.Code Ann. art. 5.82, § 4, the statute of limitations applicable at the time that suit was filed. Article 5.82, section 4 provided:

> Notwithstanding any other law, no claim against a person or hospital covered by a policy of professional liability insurance covering a person licensed to practice medicine or podiatry or certified to administer anesthesia in this state or a hospital licensed under the Texas Hospital Licensing Law, as amended (Article 4437f, Vernon's Texas Civil Statutes), whether for breach of express or implied contract or tort, for compensation for a medical treatment or hospitalization may be commenced unless the action is filed within two years of the breach or the tort complained of or from the date the medical treatment that is the subject of the claim or the hospitalization for which the claim is made is completed, except that minors under the age of six years shall have until their eighth birthday in which to file, or have filed on their behalf, such claim. Except as herein provided, this section applies to all persons regardless of minority or other legal disability.

1975 Tex.Gen.Laws, ch. 330, § 1, at 865–66 (repealed effective August 29, 1977). Dallas Society filed a separate motion for summary judgment in February 1979, on the

the medical community as necessary for each patient.

2. Scottish Rite is a charitable, scientific, and educational hospital for treating orthopedic problems in pediatric patients.

3. Jeffrey went to Scottish Rite a final time for evaluation on June 14, 1974.

grounds that plaintiffs' action was time-barred by the applicable two-year statute of limitations and that Dallas Society was entitled to charitable immunity because of its status as a charitable institution.[4]

On August 27, 1979, the district court granted the motion of Compton and Scottish Rite for summary judgment and ordered that plaintiffs take nothing from those defendants.[5] The Dorans and Dallas Society moved for reconsideration of the summary judgment.[6] On December 19, 1979, the district court vacated the order granting the summary judgment on behalf of Compton and Scottish Rite. The court then denied the joint motion of Compton and Scottish Rite for summary judgment insofar as it related to the claims on behalf of Jeffrey. The court granted summary judgment for Compton and Scottish Rite with respect to the individual claims of James and Eileen Doran. The district court provided the necessary certification for Compton to take an interlocutory appeal from the court's order, stating that "this Court is of the opinion that such Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of this litigation."[7] Record, vol. III, at 587. On February 4, 1980, the Fifth Circuit granted the parties leave to appeal.

This Court has before it for consideration on appeal only the district court's denial of Compton and Scottish Rite's motion for summary judgment with respect to the claims filed on behalf of Jeffrey Doran. *See* note 8 *infra.* Prior to the passage of article 5.82, this cause of action would have been governed by Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon Supp.1980), which provides a two-year statute of limitations for actions "for injury done to the person of another." Moreover, prior to article 5.82, in medical malpractice actions involving minors, the limitation period for the minor

4. Insofar as article 5.82, § 4 established a new medical malpractice statute of limitations for claims against certain medical personnel covered by professional liability insurance, it is pertinent to note that Scottish Rite had professional liability insurance coverage from 1970 to 1974 of up to $5,000,000. Dr. Watkins had coverage of up to $50,000. Thus, if article 5.82, § 4 were applicable to this cause of action, the claims against Scottish Rite and the Estate of Dr. Watkins would fall under its provisions. Dallas Society, however, was not covered by liability insurance since, in 1969, it was protected by the Texas Charitable Immunity Doctrine. In July 1971, the Texas Supreme Court retroactively abolished the Charitable Immunity Doctrine back to 1966. *Howle v. Camp Amon Carter,* 470 S.W.2d 629 (Tex.1971). Consequently, even if article 5.82, § 4 did apply retroactively, it would not apply to a claim against Dallas Society, an uninsured health care organization.

5. It would appear that Dallas Society's motion for summary judgment was not granted because Dallas Society was without professional liability insurance during all times pertinent to this case; consequently, the two-year statute of limitations established by article 5.82, § 4 did not apply to Dallas Society.

6. In addition, on September 5, 1979, Dallas Society filed a motion requesting that the district court grant it leave to file a third-party complaint against Compton. Dallas Society alleged that it would show by way of its third-party complaint that if it were liable to plaintiffs or to Jeffrey Doran for any damages, then it would be entitled to indemnity or contribution from Compton.

7. On December 20, 1979, the district court amended its order of the previous day by granting Scottish Rite, as well as Compton, leave to petition the Fifth Circuit to take an interlocutory appeal.

Also on December 20, 1979, Dallas Society submitted a motion requesting leave to file a cross-claim against Scottish Rite. In its motion Dallas Society contended that if it were liable to Jeffrey Doran for any damages arising from his treatment and care, then it would be entitled to indemnity or contribution from Scottish Rite. On January 3, 1980, the district court granted Dallas Society's motion to file a cross-action against Scottish Rite. On January 4, 1980, the district court amended its order of the previous day and set aside without prejudice the motion of Dallas Society to file a cross-action. The court further ordered that Dallas Society's motion to file a cross-action against Scottish Rite and Dallas Society's motion to file a third-party complaint against Compton would remain pending for further consideration by the district court after the Fifth Circuit acted on the defendants' petition for interlocutory appeal.

was tolled by article 5535, a general disability statute that provides:

> If a person entitled to bring any action mentioned in this subdivision of this title be at the time the cause of action accrues ... a minor ... the time of such disability shall not be deemed a portion of the time limited for the commencement of the action and such person shall have the same time after the removal of his disability that is allowed to others by the provisions of this title.

Tex.Rev.Civ.Stat.Ann. art. 5535 (Vernon Supp.1980).

Section 4 of article 5.82, which was enacted and became effective June 3, 1975, provided a two-year statute of limitations period for claims against certain insured health care personnel. It superseded article 5535, thereby eliminating the tolling provision of article 5535. (Pursuant to the terms of section 4, minors under the age of six had until their eighth birthday to file suit or to have an action filed on their behalf. Aside from that provision, minors were given no special consideration under the statute.) In addition, the two-year time period ran from the breach or the tort complained of, or from the date that the medical treatment or hospitalization for which the claim is made was completed. Thus, with respect to the causes of action to which the statute applied, it abrogated the discovery rule that existed under Texas jurisprudence for certain types of medical malpractice claims.

A review of the pertinent dates in this case reveals the following:

| | |
|---|---|
| Misdiagnosis and medical treatment | Between 1969 and July 20, 1973 |
| *Plaintiffs' discovery of misdiagnosis* | *July 20, 1973* |
| Effective date of article 5.82 | June 3, 1975 |
| Two years from effective date of article 5.82 | June 3, 1977 |
| Petition filed | August 26, 1977 |
| Jeffrey Doran reached majority age | January 11, 1978 |

This Court need not decide exactly when Jeffrey's cause of action actually accrued. Whether it accrued in 1969, on July 20, 1973, or at some time in between, the same result maintains. Under either statute of limitations—article 5526 or section 4 of article 5.82—a two-year period beginning at the accrual of the cause of action had run before this suit was filed. Under the provisions in effect prior to 1975 (and thus the provisions in effect when the cause of action accrued), however, the running of the statute of limitations on Jeffrey's cause of action contained in article 5526 was tolled during the period of his minority by virtue of article 5535. Thus, the suit filed on his behalf in August 1977, at a time when Jeffrey was still a minor, was timely filed. Under article 5.82, on the other hand, Jeffrey's minority did not toll the statute. Pursuant to the time limits expressly provided in that statute, Jeffrey's cause of action would have been barred before this suit was filed.[8]

Generally, the statute of limitations that is in force at the time suit is brought provides the applicable limitation period. *Raley v. Wichita County*, 123 Tex. 494, 72 S.W.2d 577, 579 (Tex.Com.App.1934, opinion adopted). *See Easterling v. Murphey*, 11 S.W.2d 329, 335 (Tex.Civ.App.—

8. As conceded by plaintiffs, regardless of the statute of limitations that is applicable—the one in effect at the time the cause of action accrued or the one in effect at the time the suit was filed—the claims on behalf of James and Eileen Doran were time-barred. Both article 5.82, § 4 and article 5526 provided a two-year statute of limitations. Although article 5526 would be tolled by article 5535 for causes of action of a minor, this tolling provision has no effect on the parents' cause of action. Moreover, the Texas Supreme Court has held that the discovery rule—which provides that the statute of limitations runs from the date that the injury was or should have been discovered by the aggrieved party and not from the date of the wrongful act or omission—does not apply to causes of action based on alleged misdiagnosis. *Robinson v. Weaver*, 550 S.W.2d 18 (Tex. 1977). *See Harvey v. Denton*, 601 S.W.2d 121, 125 (Tex.Civ.App.—Eastland 1980, writ ref'd n. r. e.).. Thus, from the dates of the final treatment of Jeffrey by Dr. Watkins (June 27, 1969), Scottish Rite (May 11, 1973), and Dallas Society (June 27, 1969), more than two years passed before the Dorans filed their suit on August 26, 1977. Even assuming the discovery rule applied, more than two years passed from the discovery of the misdiagnosis (July 20, 1973) before the suit was filed.

Waco 1928, writ ref'd) (statute of limitations that became effective subsequent to filing of suit not controlling). When the statute of limitations in effect at the time of suit is not the same as the one that was in force at the time the cause of action arose, however, it appears that under Texas law the courts must engage in a two-step analysis in order to determine which limitation period is applicable. First, the general rule of construction requires the court to determine whether the legislature intended that the statute of limitations in effect when suit was filed should be applied retroactively. Second, assuming that the legislative intent was that the statute apply retroactively, the court must determine whether a retroactive application violates the state constitutional provision against retroactive laws. The Texas Constitution provides: "No bill of attainder, ex post facto law, *retroactive law,* or any law impairing the obligation of contracts, shall be made." Tex.Const. art. I, § 16 (emphasis added). Yet not all statutes that are applied retroactively violate this constitutional provision. "It is settled that laws which affect only the remedy or procedure are not within the scope of the constitutional prohibition against retroactive laws . . . ." *Harrison v. Cox,* 524 S.W.2d 387, 391 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n. r. e.). A statute governing the limitation period during which a person can adjudicate his claim is a law affecting remedy and not one affecting substantive rights. Consequently, such a law "does not offend against the constitutional prohibition against passage of retroactive laws, or laws impairing the obligation of contracts, because it does not operate upon vested rights, but only upon the remedy for enforcing those rights." *Williams v. Reed,* 160 S.W.2d 316, 317 (Tex. Civ.App.—San Antonio 1942, writ ref'd w. o. m.). "Remedies which affect existing substantive rights may be changed provided a reasonably satisfactory remedy is retained for the benefit of the holder of the right." *Highland Park Independent School District v. Loring,* 323 S.W.2d 469, 470 (Tex.Civ. App.—Dallas 1959, no writ). Thus, the legislature may establish or shorten an existing limitation period—and this new or revised statute of limitations may apply to pre-existing causes of action—"provided a reasonable time is allowed after the enactment in which such suits may be commenced." *Williams v. Reed,* 160 S.W.2d at 317.[9]

On behalf of their son Jeffrey, plaintiffs James and Eileen Doran and defendant Dallas Society contend on this appeal that section 4 of article 5.82 does not apply to pre-existing causes of action. They maintain that the intent of the legislature was for section 4 to operate prospectively only. We agree with them and hold that under Texas law, article 5.82, section 4 does not apply to causes of action that accrued prior to its enactment and were not then time-barred. Thus, we need not reach the question of whether the statute violates the

9. No provision allowing a reasonable time to bring suits involving pre-existing causes of action after the effective date of article 5.82 is expressly incorporated into article 5.82, § 4. One Texas Court of Civil Appeals has concluded that this does not provide a sufficient basis upon which to hold the statute unconstitutional. That court reasoned that although the statute did not expressly provide a reasonable time after the enactment of the new limitation period in which to bring suit on pre-existing causes of action, if the statute were applied by the courts so as to allow such a reasonable time, then it would not offend the constitutional prohibition against retroactive laws. That court stated:

> Of course, if a limitation statute is so *applied* as not to allow a reasonable time after the law goes into effect to bring suit upon actions which are not yet barred, it would be unconstitutional .... Had the Court in this case denied a suit filed within two years from the effective date of the new limitation period, we would conclude that a reasonable time was not allowed to enforce an accrued right. But in this case, suit was filed after the period allowed by the statute itself and we conclude the remedy was barred.

*Wallace v. Homan & Crimen, Inc.,* 584 S.W.2d 322, 324 (Tex.Civ.App.—El Paso 1979, writ ref'd n. r. e.) (emphasis in original). This approach comports with the concept that the courts "must endeavor to interpret this statute so that it will be constitutional and valid if this can be done by any reasonable construction." *Harvey v. Denton,* 601 S.W.2d 121, 126 (Tex. Civ.App.—Eastland 1980, writ ref'd n. r. e.).

constitutional prohibition against retroactive laws.

█ Although the legislature can enact a statute of limitations designed to apply retroactively, a statute of limitations will apply to a pre-existing cause of action only if it was intended to apply retroactively. "In accordance with accepted construction, a limitations statute will be presumed to operate prospectively unless its terms clearly show a legislative intent that it is to be retroactive." *Highland Park ISD,* 323 S.W.2d at 470. *Coastal Industrial Water Authority v. Trinity Portland Cement Division, General Portland Cement Co.,* 563 S.W.2d 916, 918 (Tex.1978) ("It is the law of this State, and the law generally, that, in the absence of any special indication or reason, a statute will not be applied retroactively, even when there is no constitutional impediment against it."); *State v. Humble Oil & Refining Co.,* 141 Tex. 40, 169 S.W.2d 707, 708–09 (1943) ("[I]t is the rule that statutes will not be applied retrospectively unless it appears by fair implication from the language used that it was the intention of the Legislature to make it applicable to both past and future transactions."); *Alvarado v. Gonzales,* 552 S.W.2d 539, 542 (Tex. Civ.App.—Corpus Christi 1977, no writ) ("A statute should not be given retroactive effect unless such construction is required by explicit language or by necessary construction."). The terms of this statute do not evidence a clear intent either to require or to permit section 4 to operate retroactively to claims accruing prior to the effective date of the statute; indeed, they evidence a contrary intent.

This conclusion is supported by the decision of a Texas Court of Civil Appeals, which held that article 5.82, section 4 does not apply retroactively. That court stated: "It does not appear explicitly or by fair implication from the language that the legislature intended this Statute to be applied retroactively." *Harvey v. Denton,* 601 S.W.2d 121, 126 (Tex.Civ.App.—Eastland 1980, writ ref'd n. r. e.). *Harvey* involved a plaintiff who was injured by a negligently performed surgical operation on October 30, 1973. She did not discover her injury until February 13, 1974. Pursuant to the discovery rule, which was applicable to her medical malpractice claim prior to the enactment of article 5.82, section 4, her cause of action would not have been time-barred until two years from the date of discovery; thus, she could have filed her action at any time prior to February 13, 1976. She did actually file her petition on November 1, 1975. At that time, article 5.82, section 4 (which abrogated the discovery rule in causes of action to which it applied) was in effect. Consequently, under article 5.82, section 4, plaintiff's cause of action would have been time-barred two years from the date of injury. Thus, her suit would have been foreclosed on October 30, 1975—two days before she filed her suit. The *Harvey* court held that inasmuch as the language of section 4 did not evidence a legislative intent that the statute apply retroactively, section 4 did not apply to causes of action accruing before the effective date of the Act. Hence, the court held that the plaintiff's action was timely filed.

One other Texas Court of Civil Appeals case has dealt with the applicability of article 5.82, section 4 to pre-existing causes of action.[10] In *Wallace v. Homan & Crimen,*

10. A third Texas Court of Civil Appeals has addressed the constitutionality of article 5.82, § 4; however, that court was not faced with the question of the retroactive application of the statute. *Littlefield v. Hays,* 609 S.W.2d 627 (Tex.Civ.App.—Amarillo 1980). In *Littlefield,* the allegedly negligent surgery that gave rise to plaintiff's cause of action occurred on February 14, 1976—during the effective life of article 5.82. The court held that the statute was not unconstitutional on the grounds propounded by the plaintiff, which were:

> [T]he statute violates the equal rights clause of the Texas Constitution (Art. 1, § 3) and the equal protection clause of the United States Constitution (14th Amendment) because it applies, as pertinent here, only to insured doctors and abolishes the discovery rule as to them but not as to uninsured doctors.... [L]ikewise, ... the statute violates the open courts provision of the Texas Constitution (Art. 1, § 13) because it abolishes the discovery rule.

*Id.* at 629. While the court held that article 5.82, § 4 was not unconstitutional on these

*Inc.*, 584 S.W.2d 322 (Tex.Civ.App.—El Paso 1979, writ ref'd n. r. e.), plaintiff's father died on December 18, 1961, when he jumped from a window of Southwestern General Hospital. At that time plaintiff was a minor. Pursuant to the general disability statute that applied to the statute of limitations in effect at that time, the limitation period for plaintiff's wrongful death claim was tolled by his minority and he had until June 26, 1977—two years after reaching the age of majority—to file his action. He did file his action on June 24, 1977. However, according to the terms of section 4 of article 5.82, the statute of limitations in effect at the time he filed suit, the limitation period was not tolled during his minority. The court of civil appeals held that the statute must be applied to provide a reasonable time after the effective date of the statute to allow the plaintiff to bring his suit. The court concluded that two years after the date of the enactment of the statute constituted a reasonable time. Thus, the court found that his suit was barred on June 3, 1977—twenty-one days before he filed his action.

It is not clear whether the *Wallace* court addressed the question of the retroactive application of section 4. Indeed, the Dorans and Dallas Society contend that the plaintiff in the *Wallace* case conceded that the statute applied retroactively and only questioned the constitutionality of the statute on the ground that it failed to provide a reasonable time in which to file pre-existing causes of action. The court characterized the plaintiff's claim as follows: "By his first point of error, Appellant asserts that the 1975 statute violates Article I, sec. 16, of the Texas Constitution, and is void because *it is retroactive* and affords no reasonable time to bring suit on actions which were not yet barred by limitation." *Id.* at 323 (emphasis added). Thus, it would appear that the plaintiff conceded that article 5.82, section 4 controlled his action and that he only contested the constitutionality of that statute. The court proceeded to dispose of the plaintiff's contention without further mentioning the question of the retroactive application of the statute; the court focused solely on whether the statute's failure to provide by its own terms a reasonable time after its effective date to bring suit on actions not then barred violated the Texas Constitution.

It is this Court's responsibility to determine whether the Texas Supreme Court, if directly faced with the question, would hold that article 5.82, section 4 applies retroactively to pre-existing causes of action. The Texas Supreme Court's disposal of *Harvey* and *Wallace*—two arguably inconsistent cases—by refusing the writs of error on the ground of no reversible error does not provide conclusive guidance to this Court. The Texas Supreme Court's disposition of those cases can be explained in several different ways,[11] and this Court cannot discern the

grounds, it drew no conclusions with respect to the retroactive application of the statute.

11. The parties have suggested a number of different ways to view *Wallace* and *Harvey.* The Dorans and Dallas Society contend that the issue of the retroactive application of article 5.82, § 4 was never before the *Wallace* court. In fact, they assert that it appears that the plaintiff in *Wallace* simply admitted the applicability of Article 5.82, § 4 to his cause of action. Thus, they maintain that the Texas Supreme Court's refusal of the writ of error provided no indication of the supreme court's opinion as to the retroactive application of the statute. Instead, it merely indicated an approval of the result reached by the court of civil appeals in holding that a reasonable time to bring suit could be implied by the court and that, under the circumstances of that case, two years constituted a reasonable time. The Dorans and Dallas Society further contend that the issue of retroactivity was directly before the *Harvey* court and that the Texas Supreme Court's refusal of the writ in that case indicated its approval of the result that article 5.82, § 4 does not apply retroactively.

Defendants, on the other hand, attempt to reconcile these cases in an entirely different manner. They claim that in *Wallace,* the Texas Supreme Court approved the conclusion that article 5.82, § 4 applied retroactively and that two years after the enactment of the statute constituted a reasonable time in which to bring suits not then barred. In addition, they claim that the Texas Supreme Court's refusal of the writ in the *Harvey* case is not evidence of its approval of the conclusion that the statute did not apply retroactively. Defendants argue that if the *Harvey* court had applied article 5.82, § 4, and had implied a reasonable time in which the

Texas Supreme Court's position with any degree of certainty. The Texas Supreme Court's refusal of a writ of error in a case that applied article 5.82 retroactively (*Wallace*), and in a case that explicitly held that article 5.82 did not apply retroactively (*Harvey*), could have resulted from any of a number of factors: (1) factual differences between the cases (for instance, *Wallace* was a wrongful death action while *Harvey* was a personal injury action); (2) reversal of position by the Texas Supreme Court subsequent to *Wallace* and prior to *Harvey*; (3) the failure of the parties to raise the question of the retroactive application of the statute in *Wallace*; or (4) the realization that the result in the *Wallace* case—that plaintiff's action was not time-barred—would not have changed had the court found that the statute applied retroactively but that the plaintiff had filed her action within a reasonable time after the enactment of the statute. In light of the lack of certainty surrounding the Texas Supreme Court's position on this question, this Court must examine additional evidence that might indicate the way in which the Texas Supreme Court would decide this issue.

As discussed above, the well-established rule of construction in Texas is that "a limitations statute will be *presumed to operate prospectively* unless its terms *clearly show a legislative intent that it is to be retroactive.*" *Highland Park ISD*, 323 S.W.2d at 470 (emphasis added). Although the defendants argue that the terms of article 5.82 clearly evidence the Texas Legislature's intent that this statute operate retroactively, the language to which the defendants point does not support their contention. Defendants claim that because the statute states that it applies "[n]otwithstanding any other law," and that it "applies to all persons regardless of minority or other legal disability," the terms of the statute evidence an intention that it apply retroactively. This argument is unpersuasive. Although the quoted language clearly establishes that section 4 of article 5.82 supersedes the tolling provisions of article 5535 for causes of action that accrue during the effective life of section 4, it provides no guidance as to the statute's application to pre-existing causes of action. The statute does not contain the clear expression of legislative intent that is required to overcome the presumption of prospective application. Not only does the statute lack an expression of intent that it apply retroactively, but in fact, the terms of the statute itself imply that it was not intended to apply retroactively. Article 5.82 provides: "This Act shall take effect upon its passage and expire on December 31, 1977, except that causes of action accruing during the effective life of this Act shall be filed pursuant to the provisions of Section 4 hereof." 1975 Tex.Gen.Laws, ch. 330, § 1, at 866. In this provision, the Texas Legislature appears to have evidenced its intent that this statute of limitations apply only to those causes of action that accrue subsequent to the effective date of this statute.

This conclusion is further supported by language contained in the Medical Liability and Insurance Improvement Act. Tex.Rev. Civ.Stat.Ann. art. 4590i (Vernon Supp.1980). That Act expressly repealed article 5.82, effective August 29, 1977. *Id.* § 41.03. Section 10.01, the statute of limitations incorporated in the Act, is essentially the same as section 4 of article 5.82.[12] Section

plaintiff was entitled to bring suit, the result in that case would have been the same—the plaintiff's action would not have been time-barred since she filed suit less than five months after the enactment of the statute. Thus, defendants claim that the Texas Supreme Court might have approved the result of *Harvey* by its refusal of the writ, but that the supreme court undoubtedly did not approve the reasoning of *Harvey*. Unfortunately, it is not as clear to this Court as it seems to be to the parties to this lawsuit exactly what the Texas Supreme Court intended to convey by its refusal of the writs of error.

12. The statute of limitations provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the

10.02 provides: "Causes of action accruing between the effective date of this Act and the effective date of Article 5.82, Insurance Code, shall be filed pursuant to Section 4 of Article 5.82." Although the language of the subsequent statute is not controlling with respect to the application of article 5.82, the language of section 10.02 does provide at least some indication that the legislature intended section 4 to apply only to causes of action that accrued after the enactment of article 5.82.

Plaintiffs (on behalf of Jeffrey Doran) and Dallas Society contend that the purpose of article 5.82 evidences a legislative intent that section 4 operate prospectively only. They point out that this statute was enacted as a temporary, emergency measure to provide some immediate relief for what was asserted to be an existing crisis in health care professional liability insurance.[13] The purpose of the statute was "to establish standards and procedures for setting insurance rates for health care providers. One of the fundamental considerations in any insurance rate setting process is the length of time during which the insurer may be exposed to liability." *Littlefield v. Hays*, 609 S.W.2d 627, 630 (Tex.Civ.App.—Amarillo 1980). Thus, the Dorans and Dallas Society assert that article 5.82 was designed to aid professional liability insurers by providing them with some reasonable certainty in assessing the risk relating to professional liability and by limiting their liability to some extent. It was hoped that this would enable insurers to lower their rates, thereby encouraging a reduction in the cost of health care generally. The elimination of provisions that toll the statute of limitations for minors contributes to this goal by reducing the length of time during which an injured minor can bring a claim, thus reducing the period of risk for the insurance company. In addition, reduction of the limitation period allows an insurance company to predict more accurately the potential losses for a policy year. These results, in turn, theoretically make it possible for insurance companies to set more reasonable rates. Plaintiffs and Dallas Society contend that these benefits, which article 5.82 was intended to provide, largely operate prospectively. With respect to claims arising prior to the effective date of the statute, insurance policies had already been written and the rates had been calculated according to conditions as they existed at that time. Those policies had already taken into account the applicable tolling provision for minors' claims. Defendants, on the other hand, argue that applying section 4 retroactively would provide a predictable period for rating risks in policies written on a

age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1980).

13. One commentator has described the crisis as follows:

> The effects of the malpractice insurance crisis are not limited to physicians; the crisis affects the entire health care system. To the extent that physicians are forced to avoid high-risk specialties or to relocate in areas with lower insurance rates, patients are seriously prejudiced by the resulting maldistribution of medical care. Patients who remain able to obtain adequate medical care also pay for the insurance crisis in the form of higher costs passed on to them by the physicians. It therefore does not seem to be an overstatement to suggest that the medical malpractice insurance problem is "one of the nation's most visible social and political issues."
>
> Although all of the causes of the malpractice insurance crisis are not identifiable, it is generally agreed that the rapid increase in the number and amount of malpractice claims and awards is a substantial—perhaps the primary—factor in the dramatic increase in medical malpractice insurance rates. The relationship between the claims history and the increasing rates appears to be a logical one. "Because of the unpredictability of soaring jury awards and increasing frequency of claims, many insurers today are unwilling to accept the tremendously high risk associated with this type of coverage."

Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications*, 55 Texas L.Rev. 759, 760–61 (1977) (footnotes omitted). *See* Comment, *Medical Liability and Insurance Improvement Act of Texas: The New Legislative Procedure for Amputation of Patients' Rights*, 30 Baylor L.Rev. 481 (1978).

"claims made" basis. "Claims made" policies provide insurance coverage for claims made during the period of insurance based upon acts of negligence that occurred in prior years.

The arguments made by each side with respect to the purpose of article 5.82 are inconclusive insofar as discerning the legislative intent as to retroactivity. While it might be *consistent* with the purpose of the statute to apply section 4 retroactively, that alone provides no indication that the legislature *intended* it to apply retroactively. At best, it merely indicates that there is some ambiguity as to the legislative intent on the question of retroactive application. In light of this ambiguity, and the failure of the legislature to expressly provide for retroactive application, the presumption in favor of prospective application has not been overcome.

The Supreme Court of Texas has not provided conclusive evidence as to its position on the retroactive application of section 4 of article 5.82. Consequently, in determining how the Texas Supreme Court would decide this issue, this Court must rely heavily on the rule of construction that a statute will be presumed to operate prospectively unless "its terms clearly show a legislative intent that it is to be retroactive." *Highland Park ISD,* 323 S.W.2d at 470. Here, the terms of the statute do not show an intent that section 4 apply retroactively. To the extent that the statute speaks at all to retroactive versus prospective application, it indicates that the legislature intended the new statute of limitations to operate prospectively only. The legislative purpose of the statute does not mandate a contrary conclusion. Consequently, this Court is compelled to conclude that the Texas Supreme Court would, if faced with this question, hold that article 5.82, section 4 does not apply to causes of action that accrued prior to the enactment of the statute and that were not then time-barred.[14]

Defendants' reliance on *Mahathy v. George L. Ingram & Associates,* 584 S.W.2d 521 (Tex.Civ.App.—Beaumont 1979, no writ) and *Hill v. Forrest & Cotton, Inc.,* 555 S.W.2d 145 (Tex.Civ.App.—Eastland 1977, writ ref'd n. r. e.) is misplaced. In those cases, the injury that gave rise to the plaintiffs' causes of action occurred *after* the effective date of the new statute of limita-

14. Even assuming, as defendants contend, that article 5.82, § 4 was intended by the legislature to apply retroactively, the claims on behalf of Jeffrey would still not be time-barred. If the new statute of limitations was designed to apply to pre-existing causes of action, then, in order to avoid violat'ng the constitutional prohibition against retroactive laws, this Court would be required to assess what reasonable time should be allowed to Jeffrey after the enactment of the statute to file his suit. In assessing a reasonable time, this Court should be guided by *Wallace v. Homan & Crimen, Inc.,* 584 S.W.2d 322 (Tex.Civ.App.—El Paso 1979, writ ref'd n. r. e.), a Texas case applying this statute of limitations to a pre-existing cause of action involving a minor. In that case, the court stated that had the trial court barred plaintiff's suit before two years from the effective date of the statute had passed, then it would have failed to allow plaintiff a reasonable time in which to bring his suit. In that case, however, the plaintiff, although a minor at the time his cause of action accrued in 1961, reached majority age on June 26, 1975—long before two years from the effective date of the statute had passed. Thus, in that case, plaintiff had a significant amount of time after he reached the age of majority in which to file his suit. Here, two years from the effective date of the statute occurred on June 3, 1977, but plaintiff did not reach majority until January 11, 1978. Thus, were we simply to adopt the conclusion of the *Wallace* court, without examining the reasoning behind that decision, Jeffrey's cause of action would have been time-barred before he reached the age of majority and was able to file his suit. The *Wallace* court was concerned with allowing the plaintiff a reasonable time in which to file his action subsequent to the enactment of the new statute. Under the circumstances in that case, it found that two years after the effective date of the statute was a reasonable time period. Under the circumstances of the case before this Court, however, two years after the effective date of the statute would not be a reasonable time. In order to provide Jeffrey with a reasonable time in which to bring his action, it would be necessary that some amount of time after Jeffrey reached the age of majority be allowed to him. Since this suit was filed before Jeffrey reached majority, we need not decide exactly how much time after reaching majority would have been sufficient to constitute a reasonable time. Regardless of when that time limit would have expired, this suit on behalf of Jeffrey was timely filed.

tions, not *before* the new statute of limitations as in the instant case. In each case, however, plaintiff's suit was time-barred by the statute of limitations before the cause of action even accrued. In *Mahathy*, construction on certain school property was completed on October 13, 1964. Later, a ten-year statute of limitations was enacted, effective September 1, 1969, that barred actions for damages or injuries arising out of a defective or unsafe condition of any real property ten years from the substantial completion of improvements to the real property. Plaintiff's cause of action accrued on May 5, 1978, when she was injured by an alleged unsafe condition on the real property. Although a question of retroactive application of the statute of limitations was involved in *Mahathy*, the factual setting of the case is significantly different from the case at bar. The *Mahathy* court did retroactively apply the 1969 statute of limitations to improvements to real property that were substantially completed in 1964. But the injury did not occur until 1978, and at the time that the cause of action accrued, it was already time-barred. Plaintiff, a minor at the time of her injury, argued that the ten-year limitation period was tolled by article 5535. However, the court rejected plaintiff's argument, stating that:

> At the time the minor's cause of action accrued the 10-year period of limitations provided for in *Article 5536a* had already expired. The limitation period could not be tolled because it had already expired and barred any cause of action accruing after the expiration of the 10-year period. At the time of the occurrence of the minor's injuries, she had no maintainable cause of action against appellee.

584 S.W.2d at 522 (italics in original).

*Forrest & Cotton* involves a similar fact situation: (1) Construction of a sewage treatment plant and outfall trunk line was completed September 22, 1958; (2) the ten-year statute of limitations became effective September 1, 1969; and (3) plaintiffs were injured by the wrongful death of decedents on August 11, 1973. The court rejected plaintiffs' contention that it should not give retroactive effect to the statute, stating, " 'The fact that a statute authorizes the consideration of events that occurred prior to the effective date of the statute does not compel disapproval of the enactment, provided the affected parties were afforded a reasonable time to protect their interests.' " 555 S.W.2d at 150 (quoting *Texas Water Rights Commission v. Wright*, 464 S.W.2d 642, 648 (Tex.1971)). The court also rejected plaintiffs' argument that the ten-year statute of limitations was tolled during plaintiffs' minority since, at the time the minors' cause of action accrued, the ten-year limitation period had already expired and they had no cause of action.

In the case before this Court, Jeffrey Doran's cause of action was not already time-barred at the time it arose. Here, defendants are not merely attempting to consider events that occurred prior to the effective date of article 5.82, section 4; rather, they are endeavoring to persuade this Court that section 4 applies to causes of action that actually accrued prior to the effective date of the statute. Neither *Mahathy* nor *Forrest & Cotton* provides support for this application of article 5.82, section 4.

Since Jeffrey's cause of action accrued prior to the effective date of article 5.82, and since the statute of limitations of article 5.82, section 4 does not apply retroactively, Jeffrey's suit is not governed by that statute of limitations. Instead, the statute of limitations in effect when Jeffrey's claim accrued, article 5526, and the tolling provisions of article 5535 are controlling here. *See Harvey*, 601 S.W.2d at 126 ("Since we have held that appellee's cause of action accrued before the effective date of the Act, the limitation period applicable to her lawsuit was not shortened by Article 5.82, and she had until two years after discovery of the injury to file her petition."). Because we conclude that article 5.82, section 4 is inapplicable, we need not address appellees' claims regarding the constitutionality of article 5.82.

Inasmuch as the claims on behalf of Jeffrey were timely filed, the district court's denial of Compton and Scottish Rite's joint motion for summary judgment with respect to Jeffrey's claims was proper.

AFFIRMED.