**NISSAN MOTOR CORPORATION IN U.S.A., A California Corporation, Plaintiff-Appellant,**

v.

**Russell HARDING, In His Official Capacity as Executive Director of the Texas Motor Vehicle Commission, Austin, Texas, et al., Defendants-Appellees.**

No. 83–1862.

United States Court of Appeals, Fifth Circuit.

August 23, 1984.

Latham & Watkins, Hedlund, Hunter & Lynch, John P. Lynch, Charles S. Treat, Laurence H. Levine, Chicago, Ill., Joe H. Reynolds, Houston, Tex., J. Bruce Bennett, Austin, Tex., for plaintiff-appellant.

Jim Mattox, Atty. Gen. of Tex., Douglas Fraser and Susan Bradshaw, Asst. Attys. Gen., Austin, Tex., for Harding and Texas Motor Vehicle Com'n.

Joe R. Greenhill, Jr., Gary E. Zausmer, Austin, Tex., for Twin City Datsun and Gay Pontiac.

Before CLARK, Chief Judge, JOLLY, and DAVIS, Circuit Judges.

CLARK, Chief Judge:

Nissan appeals from a district court judgment abstaining from the exercise of jurisdiction based on *Texas Railroad Commission v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Because we find an unsettled issue of state law presented in this case, we affirm the district court's decision to abstain.

I

In 1979, Nissan Motor Corporation ("Nissan") and Twin City Datsun, Inc. ("Twin City") entered into an agreement that established Twin City as a dealer of Datsun automobiles and products in Texas City, Texas. The contract provided that Twin City could not relocate its dealership facility without Nissan's written consent.

On March 29, 1983, Twin City requested Nissan's permission to sell its dealership to Gay Pontiac, Inc. ("Gay") and to relocate the dealership to Dickinson, Texas. On June 3, 1983, Nissan approved the sale but refused to approve the relocation.

On June 19, 1983, the Texas legislature amended the Texas Motor Vehicle Commission (TMVC) Code. New section 5.02(13) provides:

It shall be unlawful for any manufacturer, distributor or representative to ....

(13) Notwithstanding the terms of any franchise agreement, deny or withhold approval of a written application to relocate a franchise unless (A) the applicant has received written notice of the denial or withholding of approval within 90 days after receipt of the application containing information reasonably necessary to enable the manufacturer or distributor to adequately evaluate the application, and if (B) the applicant files a protest with the Commission and establishes by a preponderance of the evidence at a hearing called by the Commission that the grounds for, and distance of, the relocation are reasonable.

Tex.Civ.Stat. art. 4413(36) Sec. 5.02(13) (Vernon's Supp.1984).

On July 11, 1983, Twin City and Gay filed a petition with the TMVC seeking a hearing under section 5.02(13) concerning Nissan's pre-enactment denial of approval for the proposed relocation. Nissan moved to dismiss the petition on the grounds that section 5.02(13) does not apply retroactively to pre-existing franchise contracts or to pre-enactment events, and that if the section did apply retroactively it would violate the Texas and federal Constitutions. Russell Harding, the Executive Director of the TMVC, denied Nissan's motion. Harding held that section 5.02(13) by its terms applied retroactively and that the TMVC lacked authority to consider any constitutional challenges to the amended act. He ordered Nissan to appear at a hearing on October 19, 1983.

On October 11, 1983, Nissan filed a complaint in district court against Harding and the TMVC alleging that the retroactive application of section 5.02(13) violates the Contracts Clauses of the Texas and federal Constitutions; the Retroactive Law Clause of the Texas Constitution, and clear and settled principles of Texas statutory construction law. The TMVC held its evidentiary hearing as scheduled on October 19.

On November 17, 1983, the district court granted TMVC's motion to dismiss on the authority of the *Pullman* abstention doctrine. The court found that the question of the retroactive application of section 5.02(13) was an unsettled question of state law. It therefore dismissed the case without prejudice.

While Nissan's appeal was pending before this court, Harding issued his Proposal for Decision based on the October 19 hearing. Harding ruled that section 5.02(13) applied retroactively to contracts in existence on the effective date of the section, but not to denials of relocation that occurred prior to the effective date. On June 28, 1984, the full Commission adopted Harding's Proposal for Decision in its entirety.

On appeal, Nissan urges that several reasons make Pullman abstention inappropriate: (1) There is no unsettled issue of state law in this case; (2) the state administra-

tive and court proceedings will entail considerable delay and will force Nissan to submit to a proceeding it has a constitutional right to avoid; and (3) the district court's abstention amounts to a requirement that Nissan exhaust state administrative remedies and therefore violates *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). We address these issues in turn below.

## II

In order to abstain from the exercise of federal jurisdiction under the authority of *Railroad Commission v. Pullman*, a federal court must find that the case presents a difficult, obscure, or unsettled issue of state law, the resolution of which could eliminate or substantially narrow the scope of the federal constitutional issue. *Railroad Commission v. Pullman*, 312 U.S. 496, 498–99, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941); *O'Hair v. White*, 675 F.2d 680, 692 (5th Cir.1982) (en banc); *Mireles v. Crosby County*, 724 F.2d 431, 433 (5th Cir.1984). Abstention is the exception, not the rule. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244 (1976). That the state courts have not interpreted the subject statute is not determinative: federal courts should exercise their jurisdiction if the state law in question is clear. *Harman v. Forssenius*, 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965); *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 92 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

Nissan contends that *Pullman* abstention is inappropriate here because the settled presumption in Texas law against retroactive application of statutes operates to render the state law in question unambiguous.

The most recent statement of the presumption of prospectivity by the Texas Supreme Court is as follows:

> The general rule is that there exists a presumption that an act is intended to operate prospectively and not retroactive-

ly. If there is any doubt, the intention will be resolved against retrospective operation of a statute.... An act will not be applied retrospectively unless it appears by fair implication from the language used that it was the intent of the Legislature to make it applicable to both past and future transactions. In ascertaining legislative intent, the entire act must be examined, not just isolated provisions in the act.

*Ex Parte Abell,* 613 S.W.2d 255, 258 (Tex. 1981) (citations omitted). The Texas courts have applied this presumption strictly and have required a clear expression of legislative intent to overcome the presumption. *See, e.g., Government Personnel Mutual Life Insurance Co. v. Wear,* 151 Tex. 454, 251 S.W.2d 525, 529 (Tex.1952) (attorney's fees statute prospective: statutes should be held prospective unless contrary construction is required by plain and unequivocal language in statute); *State v. Humble Oil & Refining Co.,* 141 Tex. 40, 169 S.W.2d 707, 709 (1943) (tax law prospective: "we find no words contained therein which indicate a legislative intent to apply its provisions to past transactions"); *Alvarado v. Gonzalez,* 552 S.W.2d 539, 542 (Tex. Civ.App.—Corpus Christi 1977, no writ) (statute of limitations prospective: "a statute should not be given retroactive effect unless such construction is required by explicit language or by necessary construction").

Harding argues that this case presents an unclear issue of state law because the language "Notwithstanding the terms of any franchise agreement" could be construed to give the statute retroactive effect (applicable to *any* franchise agreement, including those in existence before the effective date of the statute) or prospective effect (post-enactment agreements cannot al-

ter the effect of the statute). Nissan argues that the language does not clearly express a legislative intent to give the statute retroactive effect. It relies for this argument on *Doran v. Compton,* 645 F.2d 440 (5th Cir.1981). There the court, applying the Texas law presumption of prospectivity, held that a statement in a statute of limitations that the statute applies "notwithstanding any other law" is insufficient to overcome the presumption. *Id.* at 449. The court reasoned that the language clearly establishes only that other law is superseded by the statute for causes of action accruing during the statute's effective life. *Id.* Nissan contends that the language relied on by Harding is similarly inadequate to overcome the presumption. The law is therefore settled in its favor, Nissan concludes, and the federal court should not be reluctant to resolve this unambiguous question of state law.

■ If the Texas courts limited their consideration to the phrase "notwithstanding any franchise agreement" the lack of explicit language in section 5.02(13) would compel prospective application. However, Nissan's argument does not go far enough. To ascertain legislative intent, a court must examine "the entire act ... not just isolated provisions." *Ex parte Abell, supra.* No Texas court has examined the entire Motor Vehicle Code in an effort to resolve this issue. We cannot say that a Texas court would undoubtedly find that section 5.02(13) applies prospectively. When read in context of the stated broad remedial purpose of the act,[1] section 5.02(13) is reasonably susceptible of a retroactive construction to effectuate that purpose and the economic interests which prompted its enactment. We therefore decline to hold that the Texas presumption of prospectivi-

---

1. The purpose and policy of the Motor Vehicle Code are set out in Section 1.02 of art. 4413(36) as follows:

The distribution and sale of new motor vehicles in this state vitally affects the general economy of the state and the public interest and welfare of its citizens. It is the policy of this State and the purpose of this Act to exercise the State's police power to insure a sound

system of distributing and selling new motor vehicles through licensing and regulating the manufacturers, distributors, and franchise dealers of those vehicles to provide for compliance with manufacturer's warranties, and to prevent frauds, unfair practices, discriminations, impositions and other abuses of our citizens."

ty precludes *Pullman* abstention in this case.

 Nissan also argues that section 5.02(13), if construed and applied retroactively, would clearly violate the Retroactive Law Clause of the Texas Constitution.[2]

"A statute is retroactive, and prohibited by the Constitution, if it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or adopts a new disability in respect to transactions or considerations already passed." *French v. Insurance Company*, 591 S.W.2d 620, 622 (Tex. Civ.App.1979). Nissan contends that its franchise agreement gave it a vested contractual right to unilaterally approve or disapprove relocation requests based on its own business judgment. It argues that the new statute, if applied retroactively, would destroy that vested right; therefore, the statute is clearly unconstitutional and *Pullman* abstention consequently inappropriate.

Harding replies that whether this law, if interpreted to be retroactive, would impair Nissan's contract rights presents an unsettled question of state law. He urges that Nissan's rights are subject to valid exercises of the state's police power to prevent unfair or oppressive trade practices by adjusting the balance of bargaining power between car manufacturers and dealers. Twin City and Gay add that whether section 5.02(13) violates the Retroactive Law Clause of the Texas constitution also presents an unsettled question of state law. They urge that the procedures specified if held retroactive are in fact more favorable to Nissan than previous procedures. These arguments clearly demonstrate that how Texas courts will choose to apply the Retroactive law clause will depend on how they view the exercise of legislative power even if they consider it to be retroactive. This is but another facet of unsettled state law. The clause *per se* does not render abstention improper.

**2.** "No ... retroactive law ... shall be made."

### III

"Federal abstention ... presupposes the availability of an alternative state forum which can afford full and fair relief." *Duncan v. Poythress*, 657 F.2d 691, 696 n. 4 (5th Cir.1981), *cert. dismissed*, 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982). Nissan denies the availability of a full and fair state remedy for two reasons: first, the TMVC proceeding is itself a violation of Nissan's rights and therefore cannot serve to protect them; and second, because Nissan must undergo the TMVC proceedings before seeking relief in state courts, it will endure excessive delay in vindicating its rights.

 Nissan's first asserted ground of inadequacy hinges on its contention that TMVC review of relocation decisions constitutes an unconstitutional impairment of Nissan's contractual rights. Because TMVC jurisdiction is unconstitutional, Nissan argues, the administrative proceedings are not adequate. This claim is now moot. The TMVC held that section 5.02(13) cannot be applied to Nissan's denial of Twin City's relocation request. In any event, Nissan's argument misperceives the meaning of an "adequate state forum." Such a forum is one in which there is available a means of obtaining a resolution of the ambiguous state law issue. "Thus if a plaintiff would be forced to incur excessive delay in state court, or if certain forms of relief are unavailable there, or if the state prohibits its courts from deciding state law issues in abstention decisions, then abstention is inappropriate." Redish, Federal Jurisdiction: Tensions in the Allocation of Judicial Power 237 (1980) (footnotes omitted); *see, e.g., Palmer v. Jackson*, 617 F.2d 424, 429–30 (5th Cir.1980). Nissan does not contend that the TMVC is unable to decide the retroactivity issue. The essence of its argument is that an incorrect decision will cause Nissan harm. This is an argument which is better reserved for an appeal to state and/or federal courts from an adverse decision. It is inappropriate here.

Texas Constitution, art. I § 16 (Vernon 1956).

■ Nissan's claim of undue delay is an appropriate claim, but not a persuasive one. The kind of delay that argues against abstention is delay that might significantly impair constitutional rights, *see* Redish, *supra* at 236; *Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1129–34 (1974), for example, where lengthy state proceedings will chill first amendment rights, *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), or voting rights, *O'Hair v. White,* 675 F.2d 680, 694 (5th Cir.1982) (en banc).

■ Nissan's allegation that the state proceedings are not sufficiently prompt centers on the necessity of completing the TMVC proceedings before filing in state court. Those proceedings, now complete, consumed less than a year's time. Nissan has offered no evidence that the state court proceedings will be unusually protracted, and has made no showing of any harm resulting from the alleged delay that is equivalent to the chilling of first amendment rights. We therefore cannot say that the delay involved in this case outweighs the factors counseling abstention.

## IV

Nissan's final contention is that abstention in this case violates *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1983). The Supreme Court in *Patsy* refused to impose a blanket requirement that all plaintiffs bringing suit under 42 U.S.C. § 1983 exhaust state administrative remedies before suing in federal court.[3] The Court concluded that an exhaustion requirement would be inconsistent with Congressional intent in enacting the statutory precursor to § 1983. 102 S.Ct. at 2561–64. The Court found that Congress intended to provide individuals who suffered the deprivation of constitutional rights "immediate access to the federal courts notwithstanding any provision of

state law to the contrary," 102 S.Ct. at 2562. This desire was motivated by Congress's belief that state authorities had been unwilling or unable to protect individual constitutional rights. *Id.* at 2564.

■ Application of the *Pullman* abstention doctrine in a § 1983 suit is not affected by *Patsy.* Abstention is not as crude a mechanism as exhaustion. It is a means of postponing federal jurisdiction to obtain a definitive state resolution of ambiguous state law issues only when to do so will not destroy the rights of the parties and will avoid the possibility of unnecessarily deciding a federal constitutional question. It is not a blanket prerequisite to the institution of a § 1983 suit in federal court. Moreover, the *Pullman* abstention doctrine does not require a litigant remanded to state court to present his federal claims there: he may reserve such claims for federal court disposition. *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Any concern that state courts may not adequately protect federal constitutional rights is therefore allayed. Finally, while litigants may by virtue of *Pullman* abstention suffer delay in presenting claims to federal court, excessive delay causing significant impairment of constitutional rights is a factor persuading against application of the doctrine. See discussion at p. 1010, *supra.* The doctrine therefore balances the concerns expressed in *Patsy* against the needs to avoid undue interference with state administrative and judicial processes and to avoid unnecessary decision of federal constitutional issues.

## V

The district court did not err in abstaining. The case was properly dismissed "without prejudice so that any remaining federal claim may be raised in a federal forum after the Texas courts have been given the opportunity to address the state law questions in this case." *Harris Coun-*

---

**3.** The Court refused to impose a requirement of exhaustion of state judicial remedies in § 1983

actions in *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

*ty Commissioners Court v. Moore,* 420 U.S. 77, 88–89, 95 S.Ct. 870, 878, 43 L.Ed.2d 32 (1975); *see Palmer v. Jackson,* 617 F.2d 424, 431 (5th Cir.1980). We caution that such dismissal must not be used as a means to defeat Nissan's properly reserved federal claims if and when they return to federal court. *Harris County,* 420 U.S. at 89 n. 14, 95 S.Ct. at 878 n. 14.

AFFIRMED.