Everett K. HOBSON, et al., Appellants,

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 94–TX–1646.

District of Columbia Court of Appeals.

Argued Oct. 8, 1996.

Decided Dec. 5, 1996.

---

Everett K. Hobson, pro se.

Martin B. White, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the Memorandum in Lieu of Brief, for appellee.

Before SCHWELB, FARRELL and REID, Associate Judges.

SCHWELB, Associate Judge:

The District of Columbia Department of Finance and Revenue (DFR) determined that appellants Everett K. Hobson and Nora E. Hobson, who are husband and wife, were not legally entitled to certain deductions for "passive activity losses" which they had claimed on their 1989 and 1990 District of Columbia income tax returns. The Hobsons sought review in the Superior Court, but that court granted summary judgment in favor of the District with respect to both years. On appeal to this court, the Hobsons contend that the District did not "assess" the amount claimed to be due within three years after the 1989 return was filed, as required by D.C.Code § 47–1812.10(a)(1) (1990), and that the District's claim for that year is therefore time-barred. On the merits, the Hobsons assert that their deductions for both years were properly taken.

We agree with the Hobsons that although the District issued a "notice of deficiency" for 1989 within the three-year limitations period, it did not "assess" the tax until more than three years had elapsed. We therefore hold that the District's assessment of the Hobsons' 1989 tax liability was untimely, and we reverse the judgment as to that year. We conclude that the trial judge disposed correctly of the dispute over the Hobsons' 1990 income tax return.

## I.

### FACTUAL BACKGROUND

During the tax years in question, the Hobsons owned thirteen rental properties in the District of Columbia. They reported losses on the properties of $52,930 for tax year 1989 and $56,103 for tax year 1990. They claimed these losses as adjustments to income on their income tax returns for the two years.

On January 13, 1993, Linda L. Riley, a DFR Compliance Officer, sent the Hobsons a letter entitled "NOTICE OF TAX DEFICIENCY." An attachment to the letter identified the basis for the asserted deficiency as "Excessive Rental Loss Deduction." An "explanation" at the conclusion of the attachment stated: "You are allowed to deduct up to $25,000 of losses from rental real estate activities in which you have actively participated during the tax year." The notice included a recalculation of relevant parts of the Hobsons' tax returns, and the Hobsons were advised that they owed additional taxes, including penalty and interest, in the amount of $3206.25 for 1989 and $3195 for 1990.

A form entitled "WAIVER OF HEARING AND CONSENT FOR ASSESSMENT" was also attached to Ms. Riley's January 13 letter. This form included a "NOTE" which stated in pertinent part:

> The signing and filing of this waiver will expedite adjustment of your tax liability *and will result in immediate assessment of the tax* plus applicable penalty and interest.

(Emphasis added.)

Ms. Riley also advised the Hobsons in her letter that if they disagreed with the deficiency specified in the notice, they had the right, within thirty days, to file a written protest. She further explained that, upon request, the Hobsons would be granted a hearing "prior to any final determination of deficiency in tax against you." On February 8, 1993 the Hobsons filed a protest, and a hearing was held on July 20, 1993.

On July 21, 1993, the day following the hearing, Ms. Riley sent the Hobsons a second letter in which she confirmed the substance of the notice of deficiency. Several attachments to the July 21, 1993 letter revealed that the "assessment" of the Hobsons' 1989 and 1990 taxes was being effected contemporaneously with the letter. Specifically, Ms. Riley enclosed a "Notice of Tax Due" for each of the two years in question. Each of these notices contained a box entitled "*Assessment Date,*" and the date *07/23/93* was

typed into each of these boxes. In addition, the number "54" was typed on each form into a box entitled "Reason." In an "Explanation of Codes Appearing on Bill in Reason Block," No. 54 is identified as *"Deficiency Assessment* per statement previously mailed." (Emphasis added.)

Another attachment to the July 21 letter was entitled "APPEAL RIGHTS FOR FINAL DETERMINATIONS AND REFUND DENIALS." The "Appeal Rights" pamphlet advised the Hobsons, in pertinent part, as follows:

> Any person wishing to appeal an assessment of a deficiency in tax ... may, within six (6) months from the date of the assessment ... appeal to the Superior Court of the District of Columbia.... *This appeal period begins with the date of the deficiency assessment.*

(Emphasis added.)

The Hobsons paid the asserted deficiencies and, on January 14, 1994, less than six months after the July 21 letter, but more than a year after the January 13 notice of deficiency, they filed a complaint in the Superior Court challenging the DFR's disposition. Cross-motions for summary judgment were filed and, on November 28, 1994, the trial judge issued a memorandum opinion and order in which she granted the District's motion and denied the motion filed by the Hobsons. With respect to the question whether the tax assessment for 1989 was timely, the judge held that the District had complied with the statute of limitations for such assessments by issuing the notice of deficiency on January 13, 1993, less than three years after April 15, 1990 (the due date for the Hobsons' 1989 tax return). The judge wrote that "[i]n simple terms, rendering an assessment means the same thing as presenting a bill for payment." She explicitly rejected the Hobsons' contention that there was no assessment until July 21, 1993, when DFR issued its final determination.

Turning to the merits, the trial judge held that the Hobsons' right to deduct losses from their rental property operations was governed by 26 U.S.C. § 469(i) (1988). She concluded that this provision limited to $25,-000 the aggregate of the losses which the

Hobsons were permitted to deduct. The judge rejected the Hobsons' contention that they had the right to deduct up to $25,000 for each of their different rental property operations.

## II.

### THE LIMITATIONS ISSUE

■ The District contends, and the trial court held, that the January 13, 1993 notice of deficiency constituted an "assessment" of the Hobsons' tax liability and that the assessment was therefore accomplished within the three-year limitations period. This contention is contrary to the language and structure of the applicable statutes, and it cannot be reconciled with the contents of the various documents which the DFR served upon the Hobsons. Accordingly, we are compelled to reject the District's position with respect to the Hobsons' 1989 return.

The statutory provisions relevant to the issue before us reveal that a "notice of deficiency" is something quite different from an "assessment." Section 47–1812.5 of the D.C.Code (1990) provides that if a deficiency in tax is determined by the Mayor, then "the taxpayer shall be notified thereof and given a period of not less than 30 days ... in which to file a protest...." If such a protest is filed, then "[o]pportunity for hearing shall be granted by the Mayor, and a final determination shall be made as quickly as practicable." *Id.* The statute then authorizes the Mayor to determine the taxpayer's taxable income, and goes on to provide that "[a]ny assessment made or proposed on the basis of such determinations shall be deemed *prima facie* correct." Given the sequence of the sentences in § 47–1812.5, the statute obviously contemplates that an assessment is to be made *after* the notice of deficiency has been issued, *after* the taxpayer has filed a protest, and *after* any requested hearing has been held.

Section 47–1812.10 (a) provides, with certain exceptions not here relevant, that

> [t]he amount of income or franchise tax, or both, imposed by this chapter shall be assessed within 3 years after the return is filed, and no proceeding in court without

assessment for the collection of such taxes shall be begun after the expiration of such period.

The term "assess" is not defined in the statute, and we have found no dictionary definition which is dispositive as to the issue at hand. If "assessment" meant the same as "notice of deficiency," however, then a proceeding in court for collection of the taxes could be brought without the prior issuance of a notice of deficiency—a result incompatible with the provisions of § 47–1812.5 and, indeed, with common sense.[1]

The District's own communications to the Hobsons in January and July, 1993, establish beyond peradventure that the assessment of the Hobsons' tax liability was effected in July, more than three years after April 15, 1990, and not in January. The "Waiver of Hearing" form attached to Ms. Riley's January 13 notice of deficiency advised the Hobsons that their signature of the waiver *"will result* in immediate assessment." This sentence makes sense only if "assessment" was an event which would occur in the future. Obviously, no assessment had been made as of the date of the letter. The "notice of deficiency" papers mailed to the Hobsons are thus irreconcilable with the District's contention that the Hobsons' 1989 tax deficiency was assessed in January, 1993.

The contents of the July 21, 1993 package compel this conclusion even more emphatically. The Notices of Tax Due which accompanied the July 21 letter specifically identified the *Date of Assessment* as *July 23, 1993.* The "reason" for the submission of each Notice of Tax Due was described as "Deficiency assessment per statement previously mailed." Moreover, a notice of the Hobsons' appellate rights was transmitted with the July 21 letter, and not with the January 13 notice. The Hobsons were advised that the six-month appeal period *"begins with the date of assessment,"* and that date was identified in the accompanying papers as July 23, 1993. If the January 13 notice of deficiency had constituted the assessment, as the District now asserts, then the six-month period would have elapsed before the notice of appellate rights had been issued, and the Hobsons' opportunity to appeal would have expired before they were advised of their rights.

■■■ The District relies on *Floyd E. Davis Mortgage Corp. v. District of Columbia,* 455 A.2d 910 (D.C.1983) (per curiam).[2] In that case, the court and the parties apparently assumed that DFR's notice of deficiency to a corporate taxpayer with respect to the latter's franchise tax constituted an assessment, and that the taxpayer was obliged to file its appeal to the Superior Court within six months of the issuance of that notice. The only disputed issue in *Floyd Davis,* how-

1. The distinction between a deficiency notice (the so-called 90–day letter) and a deficiency assessment is also ingrained in the federal Internal Revenue Code. *See, e.g., Quigley v. IRS,* 110 U.S.App. D.C. 137, 138 n. 1, 289 F.2d 878, 879 n. 1 (1960) (quoting applicable federal statute); *Bromberg v. Ingling,* 300 F.2d 859, 861 (9th Cir. 1962). Indeed, a notice of deficiency is a prerequisite of Tax Court jurisdiction, *Abrams v. C.I.R.,* 787 F.2d 939, 941 (4th Cir.1986), and "[t]he commissioner is not supposed to assess the deficiency until the 90 days have elapsed without a petition [having been] filed in the tax court or, if review [has been] sought, until the tax court decision has become final." *Bromberg, supra,* 300 F.2d at 861. These federal authorities are instructive, for the relevant terminology in the federal statute is substantially similar to that in the District's statute. *Cf. Reliable Home Appliances, Inc. v. District of Columbia,* 219 A.2d 501, 502–03 (D.C.1966).

2. It appears that the District's claim in this court that the notice of deficiency constituted a timely assessment was something of an afterthought.

In her letter to the Hobsons of July 21, 1993, Ms. Riley identified the relevant statute of limitations as the five-year period set forth in D.C.Code § 47–1812(a)(3), which applies where the taxpayer has underreported gross income by more than 25%. There is no indication that when DFR issued the notice of deficiency in January 1993, the agency was making any conscious attempt to comply with the three-year statute in § 47–1812.10(a)(1), or even believed the three-year statute to be relevant.

The District again relied on the five-year statute of limitations in the trial court. The trial judge held, however, that the five-year provision was inapplicable to the facts at hand. The trial judge did, however, sustain what appears to have been the District's alternate position, namely, that the issuance of the notice of deficiency effected compliance with the three-year statute. In this court, the District has abandoned its reliance on the five-year statute.

ever, was whether the six-month period began to run at the time of the assessment, as the District claimed, or at the time when the deficiency was paid under protest, as the taxpayer claimed; each party relied on a different statute to support its position. We have recently reiterated that "a point of law merely assumed in an opinion, not discussed, is not authoritative," *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C.1996) (citations omitted), and that principles of *stare decisis* do not apply "unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *Id.* (Citations omitted). Because no issue was raised in *Floyd Davis* as to any possible difference between a notice of deficiency and an assessment, the opinion contains no analysis of the statutory provisions relevant to that question, or of the agency's construction of these provisions. Counsel for the District candidly acknowledged at oral argument that *Floyd Davis* is not binding authority with respect to the question presently before us, and we so hold.

The District further argues as follows:

The evident purpose of requiring the District to make a deficiency assessment within three years after the original tax return due date is to give taxpayers notice, within a fixed, reasonable, period of time, in cases where the District disputes their tax return, so that taxpayers will know how long to preserve their records and otherwise be prepared to defend their returns. This purpose was served by the notice of deficiency in this case. The notice set forth with specificity the amount of the deficiency and gave reasonable notice of the legal basis for the District's determination.

\* \* \* \* \* \*

The Hobsons' theory, under which only a final decision following the initial notice of deficiency constitutes an assessment, would complicate the application of the three year limitation period of D.C.Code § 47–1812.10(a)(1). Under D.C.Code § 47–1812.5, a notice of deficiency is issued in all, or substantially all, cases where the District seeks to collect a deficiency. What happens next, however, varies. In some cases the taxpayer may dispute the notice, leading to a subsequent final decision. In other cases, however, the taxpayer may accede to the deficiency specified in the notice, or may simply ignore the notice. Tying the statutory limitation period to the uniform event—the notice of deficiency—simplifies application of the time period in practice without impairing the notice function of the statute.

■ The District's position in this regard is eminently sensible as a matter of legislative policy. The purpose of statutes of limitation is "to bring repose and to bar efforts to enforce stale claims as to which evidence might be lost or destroyed." *Poole v. Terminix Co. of Maryland and Washington, Inc.*, 91 U.S.App. D.C. 287, 288, 200 F.2d 746, 747 (1952) (citing *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874)); *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1202 (D.C.1984). The notice of deficiency apprised the Hobsons of the fact that deductions claimed on their 1989 and 1990 income tax returns were disputed by the District. The Hobsons were thus made well aware, within the three-year period, that they must preserve their records and prepare their response to the District's contentions. The basic purpose which a statute of limitations is designed to serve was therefore achieved in this case in January, 1993.

It would also make sense, as the District suggests, to permit DFR to satisfy the statute of limitations by performing, within the three-year period, an act which is entirely within DFR's control, *i.e.*, the issuance of the notice of deficiency. The date of the assessment (as distinguished from the notice of deficiency) may depend on a number of variables—*e.g.*, whether the taxpayer protests, whether a hearing is held, and whether the dispute is promptly resolved. Under the statute as it now reads, the District can never be sure exactly how long before the expiration of the three-year period it must issue the notice of deficiency in order to ensure that the assessment will not be time-barred. It may well be desirable to avoid a situation in which, at least to some degree, DFR may need a crystal ball in order to be

able to act in timely fashion.[3]

The practical problems of which the District complains could have been readily avoided if Congress had provided in § 47–1812.10(a)(1) that the *notice of deficiency* must be issued within the three years after the taxpayer's return is filed. The statute states, however, that the amount of tax "shall be *assessed*" within that period. In this case, the assessment occurred more than three years after the Hobsons' 1989 return had to be filed.

■ "It is not within the judicial function ... to rewrite the statute, or to supply omissions in it, in order to make it more fair." *1841 Columbia Road Tenants' Ass'n v. District of Columbia Rental Hous. Comm'n,* 575 A.2d 306, 308 (D.C.1990); *accord., Chase v. District of Columbia Alcoholic Beverage Control Bd.,* 669 A.2d 1264, 1268–69 (D.C. 1995). If the language of the statute, reasonably read, creates practical problems for the agency, then a legislative remedy is required. Accordingly, we conclude that the District's challenge to the Hobsons' 1989 tax return was untimely.

### III.

### THE MERITS

■ The Hobsons do not claim, however, that the District failed to comply with the statute of limitations with respect to their 1990 return. Accordingly, we must determine whether the Hobsons were entitled to take a "passive loss" deduction in the amount of $56,103 for the 1990 tax year. The District contends that the Hobsons were limited to a deduction of $25,000. We agree with the District.

**3.** On the other hand, the District cannot and does not dispute the fact that it had three years—not an inconsiderable period—within which to issue the assessment. Moreover, although we have no occasion to consider the scope of the Mayor's authority to issue a "jeopardy assessment" pursuant to D.C.Code § 47–1812.6, we note that that provision permits the Mayor to do so whenever he "believes that the collection of any tax ... will be jeopardized by delay."

Under both federal and District of Columbia law, any rental activity is a "passive activity." 26 U.S.C. § 469(c) (1988); *see* D.C.Code § 47–1803.2(b) (adopting federal definition of adjusted gross income). In general, gross losses from passive activities may be offset against gross income from passive activities, but net losses from passive activities may not be deducted from ordinary income. 26 U.S.C. § 469(d)(1).

Under the law applicable to the 1990 tax year, there existed a limited exception to this general rule for taxpayers who, like the Hobsons, were actively involved in the management of rental property. See 26 U.S.C. § 469(i).[4] Such taxpayers were permitted to offset losses from passive activities against ordinary income, but the statute went on to provide:

(2) *Dollar limitation.* The *aggregate amount* to which paragraph (1) applies shall not exceed $25,000.

(Emphasis added.) Construing this provision literally, the trial judge held that the Hobsons were entitled to deduct a total of $25,000 in losses from all of their properties taken together.

The Hobsons contend that the statute permitted them to treat each of their various rental properties as a separate activity, and that they therefore had the right to deduct up to $25,000 in losses for each one. Given the use of the words "aggregate amount" in the statute, the Hobsons' contention is unpersuasive.[5] We therefore conclude that the trial judge's resolution of the substantive issue was correct.

### IV.

### CONCLUSION

For the foregoing reasons, the judgment is affirmed in part and reversed in part, and

**4.** This limited exception still exists, but certain statutory revisions were enacted in 1993. See note 5, *infra.*

**5.** In their brief on appeal, the Hobsons cite 26 U.S.C. § 469(c)(7) (1996 Supp.) in support of their position. This provision was, however, enacted in 1993, and is applicable only to taxable years beginning after December 31, 1993. See Pub.L. 103–66, § 13143(c) (1993), summarized in Historical and Statutory Notes to 26 U.S.C. § 469 (1996 Supp.).

the case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*