OWENS-CORNING FIBERGLAS CORPORATION, Appellant,

v.

**Paul D. HENKEL, et al., Appellees.**

Nos. 94–CV–658, 94–CV– 664 and 94–CV–665.

District of Columbia Court of Appeals.

Argued Oct. 17, 1996.
Decided March 6, 1997.

Gary Ignatowski, Baltimore, MD, with whom Edward J. Lilly, New York City and Ronald E. Richardson, Washington, were on the brief, for appellees.

Before SCHWELB, FARRELL and REID, Associate Judges.

SCHWELB, Associate Judge:

These consolidated appeals arise from actions to recover damages for personal injuries allegedly resulting from asbestos exposure. The three male plaintiffs[1] sued Owens–Corning Fiberglas Corporation (OCF) and several other manufacturers and distributors of asbestos products,[2] each plaintiff claiming that he had contracted asbestosis or cancer from his occupational exposure to asbestos. The male plaintiffs' wives[3] sued for damages for loss of consortium. Following a lengthy trial which was presented in three phases over a period of several months during the summer and fall of 1992, the jury awarded the plaintiffs a total of $15.5 million in compensatory damages. That amount was subsequently remitted by the trial judge to approximately $13 million.

On appeal, OCF contends that the trial judge erred by rejecting its claim that the plaintiffs exercised their peremptory challenges during jury selection in a racially discriminatory manner. OCF also challenges the admission, over objection, of certain "state-of-the-art" evidence tending to show that the dangerous characteristics of asbestos were known to the scientific community as early as the 1940's. Finally, OCF claims that the Henkels' action is time-barred. We affirm.

## I.

### THE "BATSON"[4] CLAIM

OCF asserted in the trial court that counsel for the plaintiffs engaged in racial dis-

---

Mark A. Perry, with whom Larry L. Simms, Washington, was on the brief, for appellant.

1. Paul D. Henkel, Hubert Stine, and John Phares. Mr. Stine died during the trial of this case.

2. The defendants other than OCF settled with the plaintiffs and are not parties to this appeal.

3. Marilyn Henkel, Shirley Stine, and Laura Phares.

4. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

crimination in the exercise of his peremptory challenges. The trial judge found no discrimination because "plaintiffs' counsel has articulated a neutral explanation with respect to each of the four jurors ... against [whom] plaintiffs exercised their peremptory strikes," and because the judge credited counsel's explanations. On appeal, OCF claims that in light of certain statistical and other evidence, the judge should have rejected as pretextual the ostensibly nondiscriminatory justifications which plaintiffs' attorney provided for the strikes. We do not reach the merits of the issue, however, for OCF's objection was untimely, and we conclude that it was waived.

■ The jury was selected on July 1, 1992. During *voir dire,* counsel for OCF interposed no objection to any of the plaintiffs' peremptory challenges. After the jury had been selected, OCF's attorney immediately turned to procedural issues relating to his adversary's opening statement, and he said nothing at all about *Batson* or about alleged racial discrimination in the selection of the jury. By failing to raise any objection, OCF thus indicated, albeit passively, that it was satisfied with the jury. Accordingly, the jurors were sworn, and the plaintiffs' attorney presented his opening statement. At the conclusion of the opening statement, the jurors were dismissed for the day.

On the following morning, OCF's attorney, in lieu of proceeding with his opening statement, claimed for the first time that the plaintiffs had stricken prospective white jurors [5] because of race. The plaintiffs argued to the trial judge, and continue to maintain on appeal, that this objection was untimely and that it should have been made before the jury was sworn and seated. We agree.

In *Batson,* the Supreme Court explicitly contemplated that any valid objection based on racial discrimination in the exercise of peremptory challenges must be seasonably presented. 476 U.S. at 99, 106 S.Ct. at 1724–25. The defendant's motion to discharge the jury had been made at the conclusion of *voir dire,* but before the jury was sworn, *id.* at 89,

106 S.Ct. at 1719, and the Court described that objection as "timely." *Id.* at 100, 106 S.Ct. at 1725. The Court did not, however, identify the precise stage of the proceedings at which a litigant must raise this type of objection.

This court first addressed a question as to the timeliness of a *Batson* motion in *Tursio v. United States,* 634 A.2d 1205 (D.C.1993). In *Tursio,* we held, in conformity with *Batson* itself, that the defendant's *Batson* motion was timely because it was made before the jury was sworn. *Id.* at 1209–10. Although we were not presented with the question whether the motion would have been untimely if it had been made after the jury was sworn, we cited with apparent approval a number of cases from other jurisdictions which answered that question in the affirmative. *Id.* (citations omitted). We also stated that "[i]t is preferable for counsel to object as soon as a discriminatory pattern emerges...." *Id.* at 1210.

We have come very close, since *Tursio,* to ruling definitively that a *Batson* claim *must* be presented before the administration of the oath to the jurors. In *Baxter v. United States,* 640 A.2d 714 (D.C.1994), on the authority of *Tursio,* we sustained the timeliness of an objection which was made after *voir dire* had been completed but before the jury was sworn. *Id.* at 717 n. 3. In so ruling, however, we reiterated "the importance, in cases of this kind, of alerting the judge to the issue as soon as a pattern allegedly emerges, so that a meaningful record can be made." *Id.* More recently, in *Safeway Stores v. Buckmon,* 652 A.2d 597 (D.C.1994), a case in which a *Batson* objection was first raised after the jury was sworn, we stated that "a trial court ruling of untimeliness would seem appropriate in light of the difficulties presented in a delayed consideration of a *Batson* challenge." [6] Read together and in sequence, these decisions strongly imply, at the very least, that an objection interposed after the jury has been sworn comes too late.

---

5. The plaintiffs are also white.

6. The quoted language, however, was not a part of our holding in *Buckmon,* for we decided that case on other grounds.

■ The obvious trend in our cases is consistent with the case law elsewhere. "The [Georgia] requirement that any *Batson* claim be raised not only before trial, but in the period between the selection of the jurors and the administration of their oaths, is a sensible rule." *Ford v. Georgia*, 498 U.S. 411, 422, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991). "The appropriate time for [a *Batson*] motion is prior to the acceptance and swearing in of the jury." *State v. Peck*, 719 S.W.2d 553, 555 (Tenn.Cr.App.1986). "[A]n objection occurring after the jury is sworn [cannot] be deemed timely." *People v. Evans*, 125 Ill.2d 50, 125 Ill.Dec. 790, 794, 530 N.E.2d 1360, 1364 (1988). Where, as here, a party has failed to make any objection at the close of *voir dire*, that party has waived any *Batson* claim. *Government of Virgin Islands v. Forte*, 806 F.2d 73, 76 (3d Cir.1986).

Several courts have held that a *Batson* objection "must be made, at the latest, *before the venire is dismissed* and before the trial commences." *See, e.g., United States v. Parham*, 16 F.3d 844, 847 (8th Cir.1994) (emphasis added); *United States v. Maseratti*, 1 F.3d 330, 335 (5th Cir.1993);[7] *United States v. Romero–Reyna*, 867 F.2d 834, 837 (5th Cir.1989), *cert denied*, 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990). These cases make eminent sense, for once the members of the venire have been released, the court is effectively precluded from re-seating any individual who has been peremptorily challenged on the basis of race or sex. *See, e.g., Epps v. United States*, 683 A.2d 749, 753–55 (D.C.1996) (affirming trial court's reinstatement of two prospective jurors who had been stricken in violation of *Batson*). A party should not be permitted to delay its

*Batson* objection until it is too late to cure any violation without beginning the jury selection process all over again.

■ In the present case, after the conclusion of *voir dire*, counsel for OCF made no allegation that *Batson* had been violated. He turned, instead, to issues unrelated to jury selection. He thus represented to the court, at least implicitly, that he was satisfied with the jury as seated. The jurors were sworn, and the trial proceeded with the opening statement on behalf of the plaintiffs. "After a party has assured the court that the jury as empaneled is acceptable, the party will not be heard to complain of the make-up of the jury panel." *Evans, supra*, 125 Ill. Dec. at 794, 530 N.E.2d at 1364 (quoting *Peck, supra*, 719 S.W.2d at 555).

■ The practicalities of the situation also cry out for judicial insistence on timeliness. Where, as in this case, a party claiming a *Batson* violation is silent during *voir dire* and complains only after the venire has been dismissed and the jury has been sworn, it becomes difficult (if not impossible) for the court and counsel to recreate in their minds the circumstances of each strike. It is not easy for an attorney charged with a *Batson* violation to defend a peremptory challenge if he or she can no longer remember the person challenged or the individuals seated in the jury box at the time. Delay likewise impairs the judge's ability to make an informed assessment of counsel's reasons for his or her strikes. A prompt objection is therefore essential if a *Batson* issue is to be addressed in an effective and meaningful manner.[8] Accordingly, we conclude that OCF waived its *Batson* claim.[9]

---

**7.** But *compare Maseratti*, 1 F.3d at 335 ("[t]he notion that a *Batson* claim is timely until the jury is sworn is incorrect") *with Tursio*, 634 A.2d at 1209 ("we conclude that a *Batson* motion will be timely when made at any time before the jury is sworn."). The ostensible inconsistency between these two statements may be more illusory than real. The question whether an objection made after dismissal of the venire but before the swearing of the jury was not presented to the court in *Tursio*, and *Tursio* cannot fairly be viewed as having decided that question. *See District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C. 1996) (rule of *stare decisis* inapplicable where

judicial mind has not passed upon the precise question presented).

**8.** Nothing in this opinion should be construed as impairing the authority of the judge to intervene *sua sponte*, even in the absence of timely objection, where there is a strong appearance of unconstitutional discrimination.

**9.** OCF contends that its belated *Batson* objection should be treated as timely because the judge reached the merits. We have held that a judgment may be sustained on a ground different from that relied upon by the trial judge, *see, e.g.,*

## II.

### "STATE-OF-THE-ART"

OCF argues that the judgment in this case should be reversed because certain "state-of-the-art" evidence was erroneously admitted over its objection. The contested evidence included the deposition of the late Dr. Kenneth Smith, a former medical director of Johns–Manville Corporation, a major manufacturer of asbestos, as well as certain other materials. This evidence was admitted to show that the medical and scientific communities have known for many years of some of the dangers of asbestos products. The plaintiffs attempted to use Dr. Smith's testimony and other such evidence to prove that OCF should have known at relevant times that its products were hazardous, and that adequate warnings of those hazards were therefore necessary to protect individuals who were being exposed to asbestos.

■ The dispositive question at the trial of this case was whether OCF owed the plaintiffs any duty to warn. In order to prevail, the plaintiffs were required to show that OCF knew *or should have known* of a danger sufficiently serious to require a warning. *See East Penn Mfg. Co. v. Pineda,* 578 A.2d 1113, 1119 (D.C.1990); *Russell v. G.A.F. Corp.,* 422 A.2d 989, 992 (D.C.1980) (per curiam); RESTATEMENT (SECOND) OF TORTS, Section 402A, comment J. The plaintiffs claimed that OCF "should have known" of dangers of which members of the medical and scientific communities, or other manufacturers, were aware.

■ In *Westinghouse Elec. Corp. v. Nutt,* 407 A.2d 606 (D.C.1979), this court stated in a related context that

[a] manufacturer is held to the degree of knowledge and skill of experts. (Citation omitted.) This standard imposes upon the manufacturer the duty of an expert to keep abreast and informed of the developments in his field, including safety devices and equipment used in his industry with the type of product he manufactures.

*Id.* at 611 (quoting *Moren v. Samuel M. Langston Co.,* 96 Ill.App.2d 133, 237 N.E.2d 759, 765 (1968)). In light of the foregoing standard, the plaintiffs were entitled to demonstrate that experts in the field were aware of the hazards of asbestos, regardless of whether or not it was shown that OCF knew of these dangers.

In *Dartez v. Fibreboard Corp.,* 765 F.2d 456 (5th Cir.1985), the court was confronted, *inter alia,* with the question whether the prior testimony of Dr. Kenneth Smith—the same expert whose deposition is at issue here—was admissible against asbestos manufacturers other than Johns–Manville (Dr. Smith's employer) to show that those manufacturers should have known of dangers of which Johns–Manville personnel and other experts were aware. The court answered that question in the affirmative:

The actual knowledge of an individual manufacturer is not the issue. If the dangers of asbestos were known to Johns–Manville at the time of Dartez's exposure, then the same risks were scientifically discoverable by other asbestos corporations. Therefore, the testimony of the medical director of the industry's largest member is relevant to plaintiff's attempt to meet the evidentiary burden defined by [*Borel v. Fibreboard Paper Prod. Corp.,* 493 F.2d 1076, 1088 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974)].

*In re O.L.,* 584 A.2d 1230, 1232 n. 6 (D.C.1990), and we discern no reason to address the merits of a contention which was not seasonably presented to the court below.

OCF also points out that some of our cases dealing with the question of timeliness were decided after the trial in this case, and argues that it would therefore be unfair for us to treat its *Batson* claim as untimely. We know of no authority for OCF's argument in this regard, and OCF has cited none. In any event, both *Batson,*

in which the Supreme Court made it clear that a timely objection was required, and *Ford,* in which that Court described the approach we now adopt as "sensible," were decided before the trial. OCF's counsel knew or should have known, on the basis of these authorities, that a *Batson* challenge which came as late as this one did—the day after the swearing of the jury, the release of the venire, and the delivery of the plaintiffs' *opening statement*—was subject to challenge as untimely.

*Id.* at 461.[10]

OCF acknowledges that *Dartez* cannot be distinguished from this case, and that courts in other jurisdictions have relied on *Dartez* to sustain the admission of the evidence which has been challenged in this case. *See, e.g., Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633, 644–45 (1992); *George v. Celotex Corp.,* 914 F.2d 26, 28 (2d Cir.1990). OCF has cited no case in which a court has held this evidence to be inadmissible. Nevertheless, OCF asserts that *"Dartez* is inconsistent with District of Columbia law, and, therefore, that this [c]ourt should decline to follow it."

OCF relies primarily on our decision in *Westinghouse, supra.* We stated in *Westinghouse* that "[e]vidence of available safety mechanisms illustrates what is feasible, and suggests a body of knowledge of which the defendant should be aware." 407 A.2d at 611. Seizing on the court's use of the word "available," OCF claims that *Westinghouse* is "directly in point" and requires us to reject *Dartez* and its progeny.

Read as a whole, however, our decision in *Westinghouse* does not support OCF's position. We made it clear in *Westinghouse* that what other manufacturers knew was admissible in the case against the particular defendant:

> Customary use [by other manufacturers] of another safety design is also relevant to establish the standard of care, and that the defendant's design is unreasonably dangerous. Evidence of available safety mechanisms illustrates what is feasible, and suggests a body of knowledge of which the defendant should be aware. . . ."

407 A.2d at 611. Although "customary use" and "knowledge" are not identical, we do not

believe that the court in *Westinghouse* would have viewed the admission of state-of-the-art evidence in this case as improper. If, as we held in *Westinghouse,* OCF is "held to the degree of knowledge and skill of experts," *id.,* then evidence as to what experts knew is necessarily relevant.

■ The trial judge is vested with broad discretion in determining whether proffered evidence is admissible. *See, e.g., Roundtree v. United States,* 581 A.2d 315, 323 (D.C. 1990). We conclude that, in the present case, the judge acted well within his discretion in admitting, over OCF's objection, the "state-of-the-art" evidence on which the plaintiffs relied.

## III.

## THE LIMITATIONS ISSUE

### A. The sequence of events.

OCF next contends that the Henkels' complaint is time-barred.[11] According to OCF, the Council's enactment of a new statute of limitations after the Henkels' right of action had accrued substantially shortened the time period during which the Henkels could bring their action. We are not persuaded by OCF's position.

We begin with the relevant chronology. Paul Henkel, a construction worker, was born in 1944. During the 1960's and early 1970's, he was exposed to asbestos products handled by workers in other trades. In 1985, Mr. Henkel, a heavy smoker, was diagnosed with cancer of the larynx, and he underwent radiation therapy.

In March 1986, Mr. Henkel suffered a recurrence of the cancer. He was hospitalized and, on April 14, 1986, the surgeons

---

**10.** Later in the opinion, in discussing the admissibility of the testimony of one Ames, an OCF representative, against another manufacturer, the court reiterated that

> the state of the art is defined in terms of what the industry as a whole knew or could have discovered by properly fulfilling their duty to test these products. Hence the fact that Ames' testimony describes only the knowledge of a nonparty does not affect its relevance on this material point.

*Dartez, supra,* 765 F.2d at 463.

**11.** OCF does not contend that the statute of limitations bars the claims of the Stines or the Phares. Our discussion of the limitations issue therefore relates solely to the claims of Paul and Marilyn Henkel.

OCF asserts that if Mr. Henkel's claim for personal injuries was untimely, then his wife's claim for loss of consortium is likewise barred. *See Stager v. Schneider,* 494 A.2d 1307, 1316 & n. 11 (D.C.1985); *cf. Elliott v. Healthcare Corp.,* 629 A.2d 6, 10 (D.C.1993). In light of our disposition, we need not address this issue.

performed a total laryngectomy. As a result of this surgery, Mr. Henkel missed several weeks of work. On January 15, 1987, Mr. Henkel's treating physician advised him by letter that his occupational exposure to asbestos may have been a primary or contributing cause of his cancer.

Under the law which was in effect both in April 1986, when Mr. Henkel's cancer was discovered, and in January 1987, when he was advised of its possible link to asbestos exposure, Mr. Henkel had three years from the time his right of action accrued to bring his civil action. This was so because, at those times, there was no statute in effect dealing specifically with the limitations period for asbestos cases. Mr. Henkel's right of action was therefore governed by the three-year "catch-all" provision set forth in D.C.Code § 12–301(8) (1995), which states:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the right to maintain the action accrues:
>
> \* \* \* \* \* \*
>
> (8) for which a limitation is not otherwise specifically prescribed—3 years.

The precise date on which the three-year period specified in Section 12–301(8) began to run is determined by the application *vel non* of the "discovery" rule to this type of action. *See, e.g., Wilson v. Johns–Manville Sales Corp.,* 221 U.S.App. D.C. 337, 341, 684 F.2d 111, 115 (1982); *cf. Bussineau v. President & Directors of Georgetown College,* 518 A.2d 423, 425–26 (D.C.1986). Mr. Henkel learned that he had cancer in April 1986, and OCF's primary position appears to be that Mr. Henkel's right of action accrued at that time.[12] Arguably, however, the three-year statute did not begin to run until January 15, 1987, for Mr. Henkel might plausibly claim that it was not until then that he "discovered or reasonably should have discovered all of the essential elements of [his] possible cause of action, *i.e.,* duty, breach, causation, and

damages." *Bussineau, supra,* 518 A.2d at 434 (citation omitted).

In this case, however, we need not determine whether the three-year statute began to run in April 1986 or in January 1987. The Henkels filed their suit in November 1988. This date was well within the three-year limitations period even if that period began to run in April 1986. There is thus no doubt that, if the timeliness of the Henkels' action is governed by the provisions of Section 12–301(8), then OCF's limitations defense must fail.

But Section 12–301(8) does not stand alone. In July 1986, Mayor Barry transmitted to the Council of the District of Columbia a bill which was designed to "add a new and more liberal limitations provision specifically governing actions for personal injury ... arising out of exposure to asbestos." July 16, 1986 letter from Mayor Marion Barry to Honorable David Clarke, Chairman of the Council of the District of Columbia, quoted in *Gwyer v. The Celotex Corp.,* 117 Daily Wash. L. Rptr. 2617, 2620 (Super.Ct.D.C.1989). This bill, known as D.C. Law 6–202, was enacted by the Council and became effective on February 28, 1987. It is now codified as Section 12–311 of the District of Columbia Code (1995). It reads, in pertinent part, as follows:

**§ 12–311. Actions arising out of death or injury caused by exposure to asbestos.**

(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following:

(1) Within one year after the date the plaintiff first suffered disability; or

(2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that the disability was caused or contributed to by the exposure.

(b) "Disability" as used in subsection (a) of this section means the loss of time from work as a result of the exposure that pre-

---

12. OCF does not contend that the statute began to run prior to the discovery of Mr. Henkel's cancer.

cludes the performance of the employee's regular occupation.

We must decide whether the Henkels' lawsuit, timely under Section 12–301(8), was rendered untimely by the enactment of Section 12–311.

OCF acknowledges that "the general purpose underlying Section 12–311 was to expand the period of time in which plaintiffs could sue to recover for asbestos injuries, not to contract it." Brief for Appellant at 17–18 (quoting *Gwyer, supra,* 117 Daily Wash. L. Rptr. at 2620).[13] Nevertheless, OCF contends that, pursuant to Section 12–311, the Henkels were required to bring their action within one year after April 14, 1986 (when Mr. Henkel first lost time from work as a result of his laryngeal cancer) or, "at the latest," within one year after January 15, 1987 (when Mr. Henkel's physician advised him that asbestos may have been a primary or contributing cause of his cancer).[14] Because the Henkels did not file suit until November 1988, OCF insists that their action is time-barred.

The Henkels respond that Section 12–311 was designed, as OCF concedes, to liberalize and extend the statute of limitations for asbestos plaintiffs. If their action satisfied the timeliness requirements of Section 12–301(8), then, according to the Henkels, it could not have been rendered untimely, at least as to them, by a subsequently-enacted liberalizing provision. The Henkels also argue, relying on the decisions construing the California statute on which Section 12–311 was modeled, that "disability," as used in Section 12–311(b), means "permanent disability," and that under that definition, Mr. Henkel's 1986 hospitalization did not trigger the Henkels' right of action. *See Puckett, supra* note 13, 215 Cal.Rptr. at 731; *Nelson, supra* note 13, 218 Cal.Rptr. at 562. Because we agree with

13. OCF's concession is a provident one. A legal memorandum which accompanied the Mayor's transmission of the proposed bill to the Council contains the following discussion of what is now Section 12–311:

> Section 5 of the draft bill would provide a new, special statute of limitations (designated D.C.Code § 12–311) relating to actions for personal injury, illness, or death caused by exposure to asbestos. The language of section 5 is based on section 340.2 of the California Code of Civil Procedure. *See Puckett v. Johns–Manville Corp.,* 169 Cal. App.3d 1010, 215 Cal.Rptr. 726, 729 (1985). This special approach to personal injury claims related to asbestos is justified by the gradually progressive nature of asbestos-caused diseases, and by the fact that even after the appearance of symptoms, actual disability may not occur until years later. *See Nelson v. Flintkote Co.* [172 Cal.App.3d 727], 218 Cal.Rptr. 562, 566–567 (Cal.App. 2nd Dist.1985), where the Court stated:
> The state certainly has an interest in protecting innocent asbestosis victims from toxic tort-feasors. Asbestosis may take up to 35 years to develop from first exposure. * * * [W]ith the passage of section 340.2, the Legislature codified a more liberal disability plus discovery rule, providing that the limitation period never commences to run for plaintiffs who know they have suffered injury or illness from asbestos exposure until "disability" has occurred. * * *
> This delayed accrual rule is more in keeping with the gradually disabling nature of the disease. Since asbestosis is a progressive lung disease, the product of prolonged expo-

> sure to asbestos fibers and dust, the disease may be detected before there has been any significant respiratory impairment or resulting partial or total disability. * * * Principles of fairness and social utility favor application of this remedial statute to plaintiffs such as Nelson. It is for society's as well as the individual's benefit that asbestosis victims should work as long as they are able to do so without placing their rights in jeopardy. * * * It would make no sense to penalize those victims who may have received an early diagnosis, particularly since there appears to be no evidence of any cure.
> *Compare Wilson v. Johns–Manville Sales Corp.,* 221 U.S.App.D.C. 337, 684 F.2d 111 (1982) (diagnosis of "mild asbestosis" did not start the statute of limitations clock running as to the separate and distinct asbestos-related disease of mesothelioma).

Acting Corporation Counsel James R. Murphy, who testified before the Council's Committee on the Judiciary regarding the bill, likewise discussed the progressive character of asbestos-related diseases. He emphasized that "the amendments would provide rules which deal fairly with victims of the hazards of asbestos exposure and with the unique nature of that injury." *See Gwyer, supra,* 117 Daily Wash. L. Rptr. at 2620 (quoting Mr. Murphy's testimony).

14. So far as we can discern, the record does not reflect that Mr. Henkel had any reason to know, prior to January 1987, that his cancer was related in any way to his exposure to asbestos. Accordingly, in light of Section 12–311(a)(2), the one-year statute probably did not begin to run until then.

the Henkels that Section 12–311 did not shorten the period during which they could file suit, we need not and do not address their second contention.[15]

■ It is undisputed that, if we consider only the provisions of Section 12–301(8), the Henkels' action was timely. OCF's position therefore presupposes that the enactment of Section 12–311 radically altered the legal landscape to the Henkels' detriment, and that the new statute substantially shortened the period during which they could file their suit. Specifically, OCF asserts that, as a result of the Council's "liberalization" of the limitations period, the Henkels now had to sue by April 13, 1987, approximately six weeks after the effective date of the new statute. If the discovery rule applies, then, according to OCF, the Henkels were obliged to file their action, at the latest, by January 13, 1988, less than a year after Section 12–311 became law. This result is ordained, OCF insists, by the "plain language" of Section 12–311, because the one-year limitations period created by that provision applies to "any" civil action seeking recovery for injury from exposure to asbestos.

It is important to note, however, that we are not dealing here with a single statute, but with two. Whether the Henkels' right of action ripened in April 1986 or, as appears more probable, in January 1987, the provision initially applicable to their case was Section 12–301(8), which gave them three years within which to sue. Section 12–311, which became effective after that three-year period had already begun to run, thus became the second statute potentially applicable to the Henkels' case. One court has observed that "[c]hanges in the law of limitations, either by legislation or fluctuations in the decisions of the [c]ourts, are productive of evil consequences," *Hicks v. Lusk & Co.,* 19 Ark. 692, 694 (1858), and it is true that the legal issues become quite difficult when we must deal with more than one potentially dispositive statute. Nevertheless, evil consequences or no, this case turns in the first instance on the interplay between the two provisions which we have discussed.

The Supreme Court of California has stated that

[s]tatutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid the forfeiture of a plaintiff's rights.... Such limitations are obstacles to just claims and the courts may not indulge in a strained construction to apply these statutes to the facts of a particular case.... Finally, there is a strong public policy that litigation be disposed of on the merits wherever possible.

*Steketee v. Lintz, Williams & Rothberg,* 38 Cal.3d 46, 210 Cal.Rptr. 781, 786, 694 P.2d 1153, 1158 (1985) (citations and internal quotation marks omitted); but *cf. post* at 1236 (Farrell, J., concurring). The California Court of Appeals quoted this very language from *Steketee* in construing the California special limitations statute for asbestos-related injuries which served as a model for Section 12–311. *Nelson, supra,* 218 Cal.Rptr. at 566. The *Nelson* decision is a part of the legislative history of Section 12–311, see note 13, *supra,* and the California courts' approach has special relevance to the present case. Moreover, this court has held that

where two constructions as to the limitations period are possible, the courts prefer the one which gives the longer period in which to prosecute the action.... If there is any reasonable doubt in a statute of limitations problem, the [c]ourt will resolve the question in favor of the complaint standing and against the challenge.

*Simpson v. District of Columbia Office of Human Rights,* 597 A.2d 392, 402 (D.C.1991) (citations and internal quotation marks omitted).

At least as applied to the Henkels, OCF's construction of Section 12–311 cannot be rec-

---

15. In their briefs and at oral argument, counsel focused most of their attention on the question whether, under Section 12–311, the "disability" from which the one-year statutory limitations period begins to run must be a permanent disability. The narrow issue which we view as dispositive was fairly raised, however, and we think it appropriate to decide the case on grounds applicable only to those plaintiffs, like the Henkels, whose right of action had already accrued before Section 12–311 was enacted, and whose situation was governed, at least initially, by Section 12–301(8).

onciled with the liberalizing purpose behind the enactment of that statute or with the principles articulated in the cases which we have cited. If we were to adopt OCF's somewhat questionable primary position—that the Henkels were required to file their action within one year after April 14, 1986—then they would have had only a six-week period to do so after the date Section 12–311 became effective. In other words, having quite appropriately believed, prior to February 28, 1987, that they could defer any suit until April 1989, the Henkels, according to OCF, would now be required to learn of the new statute (which could not yet be found even in the pocket part of the District of Columbia Code), obtain counsel, and file their suit, all within six weeks of Section 12–311's effective date, failing which they would forfeit their rights forever. Moreover, these drastic consequences are said to be compelled by a statute which, as OCF acknowledges, was designed to provide added protection to victims of asbestos exposure and to extend, not contract, the limitations period for individuals whose claims would otherwise be time-barred.

We are satisfied that Section 12–311 was not intended to achieve the result which OCF asks us to reach. Indeed, the construction for which OCF contends would present serious constitutional problems. To be sure, "[t]here is no constitutional barrier which precludes holding [the] shortened period applicable to a claim in existence when the charge was enacted, provided a reasonable time remained within which to sue." *Kalis v. Leahy,* 88 U.S.App. D.C. 166, 167, 188 F.2d 633, 634, *cert. denied,* 341 U.S. 926, 71 S.Ct. 797, 95 L.Ed. 1358 (1951); *Gwin v. Brown,* 21 App. D.C. 295, 310–11 (1903). The first Justice Harlan, writing for a unanimous Supreme Court in *Koshkonong v. Burton,* 104 U.S. 668, 26 L.Ed. 886 (1881), articulated the applicable principles:

> It was undoubtedly within the constitutional power of the legislature to require, as to existing causes of action, that suits for their enforcement should be barred unless brought within a period less than that prescribed at the time the contract was made or the liability incurred from which the cause of action arose. The exertion of this power is, of course, subject to the fundamental conditions that a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of an action before the bar takes effect.

*Id.* at 675 (citations omitted); *see also Morton v. Tullgren,* 263 Ark. 69, 563 S.W.2d 422, 425 (1978) (citation omitted); *see also Harvey v. Denton,* 601 S.W.2d 121, 126 (Tex.Civ. App.1980).

If, on the other hand, the new statute is "so applied as not to allow a reasonable time after the law goes into effect to bring suit upon actions which are not yet barred, it would be unconstitutional." *Doran v. Compton,* 645 F.2d 440, 446 & n. 9 (5th Cir.1981) (citation omitted).[16] "[A] statute could not bar the existing right of a party without affording him such opportunity; and if the legislature should attempt to do so, such act would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions." *Gwin, supra,* 21 App. D.C. at 311. Statutes should be construed, if reasonably possible, to avoid any doubt as to their constitutionality. *Umana v. Swidler & Berlin, Chartered,* 669 A.2d 717, 723 (D.C. 1995); *see also Harvey, supra,* 601 S.W.2d at 126 (applying this canon of construction to facts similar to those now before us). OCF's proposed interpretation of Section 12–311 carries with it a substantial and unacceptable risk of constitutional infirmity.

The logic of OCF's position leads to still more extreme—even absurd—consequences. Suppose that Mr. Henkel had lost time from work on March 7, 1986, and that he had also learned at that time that exposure to asbestos was a probable cause of his illness. Under OCF's theory, the Henkels would have had to file their action by March 7, 1987, just one week after Section 12–311 became law. Moreover, if we were to follow

---

16. "The time period examined for its reasonableness is that time between the statute's effective date and the date on which the preexisting cause of action would be barred under the new statute as applied." 54 C.J.S. *Limitations of Actions,* § 7 at 31 & n. 49 (1987 & Supp.1996).

the implications of OCF's position to the apparently inexorable end, then a plaintiff whose right of action accrued on January 1, 1986 would be *completely* precluded from suing after Section 12–311 became effective, for his suit would have to be filed by January 1, 1987. Instead of having a "reasonable time" after the new law is passed to bring his suit, *Morton, supra,* 563 S.W.2d at 425, our hypothetical plaintiff would have *no* time at all. But "statutes of limitation, like any other procedural or remedial law, cannot consistently with [the] ... federal [constitution] apply retroactively to [deprive] a person of a pre-existing right." *Lott v. Haley,* 370 So.2d 521, 523–24 (La.1979).

 Sections 12–301(8) and 12–311, read together, can reasonably be construed in a manner that avoids the harsh result which OCF asks us to impose. Generally, if a new statute of limitations does not specifically repeal an old one, then the old one controls actions which had already accrued where the new statute was enacted. *Sheridan v. Struble,* 977 F.2d 1229, 1230 (8th Cir.1992) (per curiam) (citation omitted). "In the absence of a clear expression of contrary intent, a statute of limitations will not be construed as operating retroactively to bar the enforcement of pre-existing rights."

*Mayor and City Council of Baltimore v. A.S. Abell Co.,* 281 Md. 162, 377 A.2d 873, 875 (1977) (citation omitted). Courts should avoid "imputing to the legislature the illogical intent to cut off a right of action before it accrues." *Commonwealth Dep't of Transp. v. All Points Constr. Co.,* 566 S.W.2d 171, 173 (Ky.App.1978).

 Even if we assume, solely for the purpose of argument, and without deciding, that notwithstanding its essentially liberalizing design, Section 12–311 reduced the statutory limitations period in some cases from three years to one year, we conclude that this reduced period cannot reasonably be applied to a plaintiff whose right of action had already accrued by the time Section 12–311 became effective. The retroactive application of Section 12–311 to persons so situated would, as we have shown, require them to bring suit in an unreasonably brief time after February 28, 1987 (or, in some cases, preclude them from instituting their action at all after that date).[17] Accordingly, we hold that even if Mr. Henkel's loss of work in April 1986 constituted a disability within the meaning of Section 12–311(b)—a question which we do not decide—the Henkels' complaint is not time-barred.[18]

**17.** To be sure, even under OCF's construction of Section 12–311, some plaintiffs would have several months after February 28, 1987 to bring their suit. Indeed, this would be true of the Henkels if their right of action did not accrue until January 1987, when Mr. Henkel was advised that exposure to asbestos may have caused his cancer. We do not believe, however, that the Council intended to create a situation in which this court would be required to decide on a case-by-case basis what period of months (less than a year) constitutes a reasonable time and what period does not. A statute of limitations should advise all concerned, with precision and clarity, of the latest date by which an action must be instituted. *Cf. Hobson v. District of Columbia,* 686 A.2d 194, 198–99 (D.C.1996). This purpose cannot be achieved if a party in the Henkels' situation is required to guess when his or her action will become time-barred.

**18.** Section 6 of D.C. Law 6–202 provides that the new statute of limitations "shall apply to actions pending in a court on July 1, 1986 and to actions filed in a court after July 1, 1986." OCF argues that this language, combined with the phrase "any civil action" in Section 12–311(a), "compels the conclusion that the one-year limitations

period is the exclusive statute governing employee asbestos action."

We think it evident from the statutory context and from the legislative history that Section 6 was designed to make the *liberalizing* provisions of the new legislation applicable as soon as possible. The Council provided in Section 6, for example, that the new statute of limitations was to apply to actions already pending in court. The legislature surely could not have intended, by enacting that provision, to direct the retroactive dismissal as untimely of actions which had already been filed and which were timely when filed. On the contrary, the purpose of Section 6 was to allow the more generous statute of limitations to apply to actions previously filed, or which might be filed, even if those actions were potentially subject to dismissal as time-barred under the statute previously in effect.

The legal memorandum submitted by the Mayor with the proposed legislation supports this conclusion. In that memorandum, the author addressed the constitutionality of Section 6, and made it clear that the issue under consideration was whether the Council could constitutionally apply the more liberal statute to pending cases without impairing the *defendant's* vested property rights. There is not the slightest suggestion in

## IV.

## CONCLUSION

For the foregoing reasons, the judgments appealed from must be and each is hereby

*Affirmed.*

FARRELL, Associate Judge, concurring:

I join the court's opinion and write briefly to make clear why I agree with its disposition of the statute of limitations issue.

I do not share the view, reflected in the decision the court quotes at the outset of its discussion, that statutes of limitations " 'are technical defenses which should be strictly construed to avoid the forfeiture of a plaintiff's rights.' " *Ante* at 1233 (quoting *Steketee v. Lintz, Williams & Rothberg,* 38 Cal.3d 46, 210 Cal.Rptr. 781, 786, 694 P.2d 1153, 1158 (1985)).

"Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980). They embody "the judgment of most legislatures and courts" that "there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the factfinding process or to upset settled expectations that a substantial claim will be barred without respect to whether it is meritorious." *Id.; see also Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).

*Bond v. Serano,* 566 A.2d 47, 50 (D.C.1989) (Farrell, J., concurring). Our task is to apply statutes of limitations according to their intended meaning as best we can discern it, not aided (if that is the word) by a rule of strict construction or a bias in favor of resolving disputes on the merits.

Second, despite broad suggestions to that effect in the court's opinion, application of the new statute of limitations to bar the Henkel plaintiffs' claim would create no constitutional problem. The new statute became

effective February 28, 1987. OCF does not seriously dispute that accrual of the Henkels' cause can fairly be dated as January 15, 1987, when Mr. Henkel received a letter from his physician informing him of a possible causal link between the asbestos exposure and his laryngeal cancer. Henkel therefore had fully eleven months in which to bring suit, which was manifestly "a reasonable time . . . within which to sue under the new statute." *Kalis v. Leahy,* 88 U.S.App. D.C. 166, 167, 188 F.2d 633, 634, *cert. denied,* 341 U.S. 926, 71 S.Ct. 797, 95 L.Ed. 1358 (1951). As the court acknowledges, any due process claim that the new statute unfairly cut off a previous right to sue would have to be *as applied. Ante* at 1234 (quoting *Doran v. Compton,* 645 F.2d 440, 446 & n. 9 (5th Cir.1981) (statute unconstitutional if "so applied as not to allow a reasonable time")). The Henkels would have no such argument.

Nevertheless, in treating the interplay of two statutes of limitations, the later one clearly intended to liberalize the time for filing suit, the court has reasonably concluded that the second statute was not meant to bar suits based on causes of action accruing before its effective date. Under OCF's contrary interpretation, a potentially large number of causes that ripened under the former three-year period would retroactively be denied a remedy, something wholly inconsistent with the ameliorative purpose of the new statute. OCF relies on section 6 of the act, which makes the new law apply to "actions pending in a court on July 1, 1986, and to actions filed in a court after July 1, 1986"— *i.e.,* well before the effective date of the new statute. But, as the court points out, read literally this would obliterate actions previously filed that were timely under the existing statute but not under the new one, a bizarre result given the conceded purpose of the statute. Section 6 is rationally understood as meant to benefit persons who had previously filed suits that were pending as far back as July 1, 1986, but who would lose on limitations grounds except for the key liberalizing feature of the new statute: the

---

the Mayor's memorandum, or anywhere in the legislative history, that Section 6 was designed to

subject persons in the Henkels' circumstances to the new one-year statute.

linking of accrual to an actual "disability" defined by reference to "loss of time for work." The broad language of § 12–311(a) cited by OCF ("In *any* civil action for injury or illness based upon exposure to asbestos" (emphasis added)) does not compel the conclusion that the Council meant to bar suits deferred in reliance on a three-year limitations period later superseded.