EASTERLY, Associate Judge,
dissenting:
Juror number 442 was a fourteen-year veteran of the United States Army. He was also African-American. When the government sought to use its fifth and sixth peremptory strikes against him and another African American, juror number 18, the trial court asked for an explanation. The government had already used three of its first four peremptory strikes to remove African Americans from the petit jury. The government gave a race-neutral explanation for striking juror number 442, namely: “[H]e was very soft[-]spoken and I thought he would get pushed around in a jury.” The trial court did not credit this explanation and immediately informed the prosecutor: “That doesn’t pass muster.” The court subsequently reiterated that, although the government’s concern might have been legitimate with respect to juror number 18, for whom the government had offered a “similar reason” based on his “youth,”[1] the court did not “see any of *1115 that in the way the older man answered th[e voir dire] questions,” declaring: “I don’t get that at all.”
At this point in the proceedings, the court had all the information that a Batson inquiry[2] is supposed to provide: The court had been given a reason by the government for the exercise of a questionable peremptory strike and the court had determined that this reason was not credible. The only conclusion for the court to draw at that point was that the government had improperly struck juror number 442 on the basis of his race.' It was thus error for the court not to reseat juror number 442, and we must reverse.[3]
My colleagues in the majority assert, however, that all discussion up to this point in the proceedings was part of a step-two analysis of whether the government had properly provided a non-race-based reason, and that, as to step three, the court’s “ultimate assessment” was that there was no legitimate Batson challenge. I cannot agree.
To begin with, the preceding discussion did not merely address the second step of the Batson inquiry; the court went beyond discerning whether the government’s reason was race-neutral to the third step and assessed whether the reason was, in fact, credible. Cf. Smith v. United States, 966 A.2d 367, 374 (D.C.2009) (explaining that “the second step of [Batson ] does not demand an explanation that is persuasive or even plausible” (internal quotation marks omitted)); United States v. Evans, 192 F.3d 698, 701 (7th Cir.1999) (noting that “[a]ny neutral reason, no matter how implausible or fantastic, even if it is silly or superstitious, is sufficient” to satisfy step two of a Batson analysis (internal quotation marks omitted)). As noted above, the court said it did not see what the government had seen in the juror, and then asked the government if it had made “any notes” on juror number 442. The government could only repeat that its notes reflected that he was “soft[-]spoken. His tone of voice was very quiet.” The court did not seem impressed with this answer, rhetorically inquiring, “So you like screamers, you like yellers?” Then the government explained that the concern was that the juror would be unwilling to express and defend his opinions. This dialogue is clearly focused on whether the government’s non-race-based reason was pretex-tual.
Moreover, this dialogue clearly demonstrates that the court still believed that the government’s justification did not “pass muster.” Indeed the court had been given no good reason by the government to reconsider its earlier negative assessment of *1116 the government’s proffered reason for its decision to strike juror number 442. Beyond the assertion that juror 442 was “soft-spoken,” which the trial court rejected, the court had been given no foundation in anything juror 442 had said or done for the government’s peremptory strike.
My colleagues determine that the court must have reconsidered its assessment of the government’s proffer by pointing to the court’s final statement on the subject: “[A]t this point ... it does not raise to the level of a legitimate challenge.” But the court’s explanation for that conclusion is precisely what is so troublesome about this case. The court stated that it “believe[d] the[ ] [government] did articulate non-race based reasons [for the peremptory strike]” — which is clearly correct, but not the ultimate issue. See supra note 2. The determinative question was whether the government had used a supposed demean- or observation as a pretextual basis for a racially motivated peremptory strike. See Smith, 966 A.2d at 383 (explaining that demeanor observations “must be closely scrutinized because they are subjective and can easily be used by a prosecutor as a pretext for excluding persons on the basis of race” (internal quotation marks omitted)). As to this question, the court, in the end, punted, stating: “I guess it’s not my job to agree with them or disagree with them but to listen and see whether the reason is based on anything that the jurors said or any behavior that the juror demonstrated.”
It was the court’s job to assess not merely whether there was any evidentiary support in the record for the government’s explanation for decision to strike juror number 442, but also whether the government’s non-race-based reason for its peremptory challenge was credible. In the third step of the Batson inquiry, “the trial court must decide whether the defendant has proved purposeful racial or gender discrimination. The resolution of this factual question ‘comes down to whether the trial court finds the prosecutor’s race-neutral [and gender-neutral] explanations to be credible’ or pretextual in light of all the relevant evidence.” Robinson v. United States, 878 A.2d 1273, 1282 (D.C.2005) (emphasis added) (citation omitted) (quoting Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)); accord, Smith, 966 A.2d at 375. Here the court had determined that the government’s explanation for its use of a peremptory challenge to strike juror number 442 was not credible, but it nonetheless let this strike stand and told the government only that it was going to “have a keen eye going forward.” This was error.
Batson does not allow for one free pass. “The Constitution forbids striking even a single prospective juror for a discriminatory purpose.” Snyder, 552 U.S. at 478, 128 S.Ct. 1203 (cited favorably in Smith, 966 A.2d at 369). We have previously acknowledged that “unless the trial court rigorously scrutinizes the prosecutor’s race-neutral explanations, Batson’s promise of eliminating racial discrimination in jury selection will be an empty one.” Smith, 966 A.2d at 376 (quoting Tursio v. United States, 634 A.2d 1205, 1211 (D.C.1993)). The same holds true if a trial court scrutinizes the government’s explanation for a peremptory challenge, finds it wanting, but then takes no action.

. Regarding juror number 18, the government expressed concern that "he’d not be an assertive member of the jury if he has an opinion or given the fact that he’s inexperienced in his youth ... he may not have the confidence to voice his views during deliberation.” However, the government never asked juror number 18 his age, and the record reflects that the government did not seek to strike two other youthful jurors who were seated on the jury: juror number 446, who was one year out of high school and whose youthful appearance prompted the trial court to observe that he "looked a lot younger than that”; and juror number 28, who was a sophomore in college.

. A challenge under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), generally has three steps: (1) defense counsel must make a prima facie "showing that the totality of relevant facts gives rise to an inference of discriminatory purpose,” (2) the government must then "come forward with a neutral explanation that is related to the particular case to be tried," and (3) the court must determine if "the explanation given [by the government] is a pretext for discrimination.” Smith v. United States, 966 A.2d 367, 374 (D.C.2009), as amended on reh’g (May 14, 2009) (internal quotation marks omitted); see Robinson v. United States, 878 A.2d 1273, 1282 (D.C.2005). Here, because the court sua sponte questioned the government’s use of peremptory strikes — as it had full authority to do, see Owens-Coming Fiberglas Corp. v. Henkel, 689 A.2d 1224, 1228 n. 8 (D.C.1997) — the Batson inquiry reduced to the government’s proffer of a non-race-based reason for the exercise of its peremptory strike and the court's evaluation of that reason.

. Smith, 966 A.2d at 369 ("[RJecognizing that [appellant] would be entitled to reversal ... if the record establishes that race was a consideration in the prosecutor's decision to strike even one African American juror.” (citing Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008))).