**MISSISSIPPI SURPLUS LINES ASSOCIATION Plaintiff**

v.

**State of MISSISSIPPI and J.K. Stringer, in His Official Capacity as State Fiscal Officer Defendants**

No. CIV.A. 3:04CV670LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

July 26, 2005.

**983**

Thomas A. Cook, B. Wade Smith, IV, C. Ted Sanderson, Copeland, Cook, Taylor & Bush, Ridgeland, MS, for Plaintiff.

Meredith McCollum Aldridge, MS Attorney General's Office, Jackson, MS, for Defendants.

*MEMORANDUM OPINION AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants the State of Mississippi and J.K. Stringer in his official capacity as State Fiscal Officer for judgment on the pleadings or, in the alternative, to abstain. Plaintiff Mississippi Surplus Lines Association has responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that the motion should be denied.

Mississippi Surplus Lines Association (MSLA) filed this action seeking declaratory and injunctive relief relating to certain funds collected by it under to authority granted by the Mississippi Insurance Commissioner pursuant to Mississippi Code Annotated § 83–21–21. That statute, enacted in 1997, authorizes the Mississippi Commissioner of Insurance to "rely upon the advice and assistance of a duly constituted association of surplus lines agents in carrying out the purposes of this chapter," and provides that

> [u]pon request from the association, the Commissioner of Insurance may approve the levy of an examination fee of not more than one percent (1%) of premiums charged under this chapter for the operation of the association to the extent that such operation relieves the commissioner of duties otherwise required of the Commissioner of Insurance under this chapter.

Miss.Code Ann. § 83–21–21(7). In 2004, the Mississippi Legislature amended the statute by adding the following paragraph:

> (9) The fees levied and collected by the association pursuant to this section have been and remain public funds and shall be subject to transfer to the Department of Insurance Special Fund by act of the

984

Legislature; provided, however, that not more than Two Million Dollars ($2,000,-000.00) shall be transferred.

The legislature contemporaneously authorized the State Fiscal Officer to transfer to the State's Budget Contingency Fund varying amounts from certain enumerated special funds, including the Insurance Department Fees and Assessment Fund, Fund No. 3501, and provided that

> [t]he funds required to be transferred from the Insurance Department's Fund No. 3501 in subsection (1) of this section shall be derived from funds transferred to the Insurance Department under Section 83–21–21(9), Mississippi Code of 1972, as amended by House Bill No. 834, 2004 Regular Session.

MSLA seeks declaratory and injunctive relief based on allegations that these amendments violate the Fifth and Fourteenth Amendments to the United States Constitution because the legislation "provide[s] for the taking of MSLA's private property for public use, without compensation and without due process." MSLA also alleges that the legislation violates Article 3, Section 17 of the Mississippi Constitute as it "direct[s] the taking of MSLA property without due compensation."

Defendants argue in their motion for judgment on the pleadings that plaintiff has not stated any valid claim for relief, so that this action should be dismissed. Alternatively, they submit that this court should abstain from hearing this matter under *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

*Eleventh Amendment Immunity*

■ The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." The Supreme Court has interpreted the Eleventh Amendment to prohibit "suits brought in federal courts by [an unconsenting State's] own citizens as well as by citizens of another state.'" *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In addition, this principle of state-sovereign immunity "generally precludes actions against state officers in their official capacities," *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir.2004) (citing *Edelman*, 415 U.S. at 663–69, 94 S.Ct. 1347), since such suits are considered suits against the state, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See also Anderson v. Abbott*, 83 Fed.Appx. 594, 594 (5th Cir. 2003) (stating that "'as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.'") (quoting *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

■ There are, of course, well-recognized exceptions to the general immunity protections of the Eleventh Amendment: A state may consent to be sued, or Congress may clearly and expressly abrogate the states' immunity. *See Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 276 (5th Cir.2005). Neither of those exceptions is arguably pertinent here. A third exception exists, however, pursuant to *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908): The Eleventh Amendment does not bar a suit for prospective injunctive or declaratory relief against a state official who is alleged to be acting in violation of federal law. *See Cox v. City of Dallas, Tex.*, 256 F.3d 281, 307–308 (5th Cir.2001).

The *Ex parte Young* doctrine is premised on the concept that a state cannot authorize its officials to violate the Constitution and laws of the United States. *See Ex parte Young,* 209 U.S. at 160, 28 S.Ct. 441, 52 L.Ed. 714 ("The State has no power to impart to [the state officer] any immunity from responsibility to the supreme authority of the United States."). The Supreme Court's "decisions repeatedly have emphasized that the *Ex parte Young* doctrine rests on the need to promote the vindication of federal rights." *Pennhurst,* 465 U.S. at 105, 104 S.Ct. 900, 79 L.Ed.2d 67.

■ In all events, though, the Eleventh Amendment prohibits suits in federal court against a state and state officers in their official capacities based upon violation of *state law* absent consent of the state, *see Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900, for as the Supreme Court explained in *Pennhurst,*

A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result directly conflicts with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Id.*

■ In view of the *Ex parte Young* exception, defendants herein explicitly acknowledge that the Eleventh Amendment is no bar to plaintiff's federal claims against Stringer, who has been sued only in his official capacity, though they do contend that the federal claim against the State is foreclosed by the Eleventh Amendment. Plaintiff does not dispute this.[1] Defendants' further position, though, that plaintiff's state takings claim against the State and Stringer is barred by the Eleventh Amendment, is disputed by plaintiff.

As to this issue, plaintiff, citing dictum from a footnote in the Fifth Circuit's decision in *Word of Faith World Outreach Center Church, Inc. v. Morales,* 986 F.2d 962 (5th Cir.1993), argues that according to the Fifth Circuit's interpretation of *Pennhurst,* the Eleventh Amendment has no applicability to the state law claim here, which seeks to enjoin Stringer from acting in violation of state law, rather than seeking to enjoin him to act affirmatively in accordance with state law.

In *Word of Faith,* the Fifth Circuit found that the Eleventh Amendment did not bar a federal suit against the Texas Attorney General because he had acted beyond the scope of the authority conferred on him by state law, so that for purposes of Eleventh Amendment analysis, the Attorney General was considered to have acted in his individual, rather than his official capacity. 986 F.2d at 965–66. In so holding, the Fifth Circuit implicitly applied what has been termed the "ultra vires" exception to Eleventh Immunity, which the Supreme Court had recognized in a number of decisions pre-dating *Pennhurst.* For example, in *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), the Supreme Court had written,

There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign. If the officer purports to act as an

---

1. To the extent plaintiff may be challenging the proposition that the State itself enjoys Eleventh Amendment immunity, its position is not well grounded and is rejected.

individual and not as an official, a suit directed against that action is not a suit against the sovereign.... On a similar theory, where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief. It is important to note that in such cases the relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power.

Thus, in the subject footnote in *Word of Faith*, the Fifth Circuit, discussing the Supreme Court's decision in *Pennhurst*, stated,

> This fact (that the state official in *Pennhurst* acted within his authority), the [*Pennhurst*] Court added, took the facts in *Pennhurst* out of that exception to Eleventh Amendment immunity provided where a state official's actions are unauthorized by state law. "Since it cannot be doubted that the statutes at issue here gave petitioners broad discretion in operating *Pennhurst*, the conduct alleged in this case would not be ultra vires ...." *Pennhurst*, 465 U.S. at 110–11, 104 S.Ct. at 913–14 (citations omitted). Thus, *Pennhurst* stands for the proposition that the Eleventh Amendment bars suit not, as the district court found here, where the state official's actions are alleged to be *un*authorized by state law but where state law imposes an *affirmative* duty upon the official, and it is that duty that provides the basis for the injunctive relief sought.

In this case, although plaintiff maintains that by this language, the Fifth Circuit has limited Eleventh Amendment immunity to situations in which a plaintiff seeks to com-

pel an official to affirmatively act (as opposed to refrain from acting), this court, like defendants, views the statement merely as an acknowledgment of the context in which *Pennhurst* was decided. Here, in contrast to *Word of Faith*, defendant Stringer is sued only in his official capacity, and it cannot reasonably be contended, nor is it contended, that he lacks authority under state law to take the challenged actions. *See Pennhurst*, 465 U.S. at 102, 104 S.Ct. 900 (explaining that "a state officer may be said to act *ultra vires* only when he acts 'without any authority whatever' ") (citations omitted); *see also Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir.1985) (referencing *Pennhurst's* " 'ultra vires' exception to eleventh amendment immunity, and concluding that a state officer may be said to act *ultra vires* only when he acts 'without any authority whatever' ") (quoting *Pennhurst* ).

Plaintiff next argues that because Mississippi law gives rise to the property interest protected under the Fourteenth Amendment to the federal constitution, *Pennhurst* does not bar its claim based on the takings clause of the state constitution. Of course, the Eleventh Amendment is inapplicable to the extent that plaintiff presents a federal claim for relief against Stringer in his official capacity, even though state law is the ultimate source of the alleged property interest sought to be protected. However, plaintiff cannot avoid application of Eleventh Amendment immunity to its claim for relief based directly on *state* law.

### On the Merits

■ Defendants next argue that plaintiff's federal takings claim fails because as a matter of law, the funds at issue are public funds, not private property, and as such, cannot be subject to a "taking" under the Fifth Amendment. *See* U.S. Const., Amend. 5 ("[N]or shall private property

be taken for public use, without just compensation."). Defendants point out that the challenged legislation is clear on its face, unambiguously providing that the funds at issue are "public funds," and they thus conclude that plaintiff's complaint, which alleges that the subject funds are its private property, must be dismissed.

The whole point of plaintiff's complaint, however, is that the legislation touted by defendants as clearly foreclosing plaintiff's claim, is the *basis* for plaintiff's claim that its constitutional rights have been violated. Plaintiff's position is that the funds are its private property that may not be taken by legislative fiat without just compensation and due process. To merely assert that the funds are not private funds because the legislation which authorizes their taking—the challenged legislation—proclaims them to be "public" funds puts the cart before the horse. A judgment on the pleadings is not proper in this case.

*Pullman Abstention*

 Under the *Pullman* abstention doctrine, "a federal court should abstain from exercising its jurisdiction 'when difficult questions of state law must be resolved before a substantial federal constitutional question can be decided.'" *Parm v. Shumate,* 73 Fed.Appx. 78, 2003 WL 21756349 (5th Cir.2003) (citations omitted). "The gist of *Pullman* abstention is that, when state law is unclear, a federal court should avoid litigating a constitutional issue by staying its proceedings and awaiting a potentially dispositive pronouncement by the state courts." *Id.* (citing *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)). "'By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and "needless friction with state policies ..."'" *Id.* (quoting *Midkiff* ).

 "In order for abstention based on *Pullman* to be appropriate, the case must

involve: (1) a federal constitutional challenge to a state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for [the federal court] to rule on the constitutional question." *Id.* (citing *Nationwide Mutual Ins. Co. v. Unauthorized Practice of Law Committee,* 283 F.3d 650, 653 (5th Cir.2002)). In *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236–237, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), the Court considered an act which "unambiguously provide[d] that '[t]he use of the power ... to condemn ... is for a public use and purpose.'" (citations omitted). The Court concluded that abstention was not proper under *Pullman,* explaining,

> There is no other provision of the Act—or, for that matter, of Hawaii law—which would suggest that § 516–83(a)(12) does not mean exactly what it says. Since "the naked question, uncomplicated by [ambiguous language], is whether the Act on its face is unconstitutional," *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971), abstention from federal jurisdiction is not required.

The Fifth Circuit has similarly repeatedly emphasized that "abstention is the exception, not the rule," *Nissan Motor Corp. in U.S.A. v. Harding,* 739 F.2d 1005, 1008 (5th Cir.1984), and thus stressed that the "decision to abstain under *Pullman* turns on the existence of an ambiguous state law," *Baran v. Port of Beaumont Nav. Dist. of Jefferson County, Tex.,* 57 F.3d 436, 442 (5th Cir.1995). "In situations ... in which there is no question of ambiguous state law—the interpretation of which will substantially modify or eliminate the constitutional question—for a federal court to abstain from exercising jurisdiction over the case would clearly be inappropriate." *Id.See also Lipscomb v. Columbus Mun. Separate School Dist.,* 145 F.3d 238, 243 (5th Cir.1998) ("*Pullman* abstention de-

pends first and foremost upon an ambiguity in state law. . . . *Pullman* does not command district courts to abstain simply to permit state review of an unambiguous statute that has previously never been interpreted by a state court."); *Word of Faith*, 986 F.2d at 967 (observing that *Pullman* abstention is not proper unless state law in issue is fairly susceptible of an interpretation that might avoid or modify the federal constitutional question); *Nissan Motor Corp.*, 739 F.2d at 1008 (5th Cir.1984) ("That the state courts have not interpreted the subject statute is not determinative: federal courts should exercise their jurisdiction if the state law in question is clear."); *BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 953–954 (5th Cir. 1977) (emphasizing that *Pullman* doctrine "contemplates that deference to state court adjudication only be made where the issue of state law is uncertain," and holding that *Pullman* abstention was not proper where "by their very terms, the challenged statutes could scarcely be clearer in effect, if not in purpose" so that there was "simply no plausible construction of the challenged statutes" that would have obviated the constitutional inquiry).

█ In the case at bar, there is nothing ambiguous about the statute; it plainly provides that the funds collected and held by MSLA are "public funds." Defendants themselves declare in their briefs to the court that "[t]he Legislation is clear on its face." As state law is clear, leaving only as " 'the naked question, uncomplicated by [ambiguous language], [of] whether the Act on its face is unconstitutional,' absten-

tion from federal jurisdiction is not required." *Midkiff*, 467 U.S. at 237, 104 S.Ct. 2321.[2]

*Conclusion*

Based on the foregoing, it is ordered that defendants' motion is well taken as to plaintiff's claims against the State and as to plaintiff's state law claims against Stringer in his official capacity. It is not well taken as to plaintiff's federal claims against Stringer in his official capacity. It is further ordered that defendants' motion for *Pullman* abstention is denied.

---

**2.** Notably, in *BT Inv. Managers, Inc. v. Lewis*, the appellant argued that since the state constitution contained a provision equivalent to the due process clause of the fourteenth amendment to the United States Constitution, *Pullman* abstention was proper "in view of the possibility that state constitutional scrutiny by the courts of Florida might obviate the necessity of a federal constitutional decision."

559 F.2d 950, 954 (5th Cir.1977). The court rejected this argument, in reliance on the Supreme Court's holding in *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), "that where a state statute can be challenged under essentially identical state and federal constitutional provisions, abstention is improper." 559 F.2d at 954.